William J. Began, S.
This is a matter of first impression insofar as this court is concerned in that it deals with the rights *1064 of an unwed father who has applied for the guardianship of the person and property of his three minor children of the ages of 14, 12 and 10. The application is opposed by two sisters who themselves seek guardianship of the children.
Recently, on April 3, 1972, in Stanley v. Illinois (40 L. W. 4371), the Supreme Court raised the question of an unwed father’s rights in a situation where the State of Illinois by statute declared the children to be wards of the State upon the death of their mother. It was therein held:
1. Under the Due Process Clause of the Fourteenth Amendment petitioner was entitled to a hearing on his fitness as a parent before his children were taken from him.
(a) The fact that petitioner can apply for adoption or for custody and control of his children does not bar his attack on the dependency proceeding.
(b) The State cannot, consistent with due process requirements, merely presume that unmarried fathers in general and petitioner in particular are unsuitable and neglectful parents. Parental unfitness must be established on the basis of individualized proof.
2. The denial to unwed fathers of the hearing on fitness accorded to all other parents whose custody of their children is challenged by the State, constitutes a denial of equal protection of the laws.
The attorney for the petitioner has filed a very thorough and extensive brief reviewing law questions dealing generally with property rights. He does, however, contend that under the Stanley case {supra), the petitioner is not only entitled to a hearing as to his fitness but that proof of unfitness must be established by respondent. He argues that the Equal Protection Clause requires that the unwed father be treated in similar manner as married parents, divorced parents, or unmarried mothers and must be accorded the same rights and privileges before their children can be taken from them.
The guardian ad litem appearing in behalf of the infants alleges that the deciding factor in this proceeding is not the fitness of the father but the ‘ ‘ interest of the infant ’ ’. He urges that the court should be guided by the discretion granted it under SCPA 1707, together with the wishes of the children. (Matter of Stuart, 280 N. Y. 245.)
This proceeding is not to be confused with the issues that may well arise in an adoption proceeding wherein the consent of a natural parent may be dispensed with only in certain specified instances, including a finding of abandonment, and wherein the *1065 consent of an unwed father is unnecessary (Domestic Relations Law, § 111.) Article 17 of the SOPA does not preclude notice to an unwed father. He has the right to he heard by virtue of his status as a parent and is a proper party in guardianship proceedings. The fact that petitioner was not married to the mother of the infants does not give rise to a presumption of unfitness in this proceeding. In this respect the Stanley case is not here applicable. The unwed parent is treated in like manner as other parents. The legitimacy of the father is not in issue. (People ex rel. Meredith v. Meredith, 272 App. Div. 79, afifd. 297 N. Y. 692.)
The discretion granted to the court is clearly set forth (SOPA 1707): “ 1. If the court be satisfied that the interest of the infant will be promoted by the appointment of a guardian of his person or of his property, or of both, it must make a decree accordingly*. The same person may be appointed guardian of both the person and the property of the infant or the guardianship of the person and of the property may be committed to different persons. The court may appoint a person other than the parent of the infant or the person nominated by the petitioner.” The court is not without power, therefore, to appoint a stranger as the guardian of an infant’s person even though no moral turpitude or other fault on the part of the natural parent is shown. The fitness or unfitness of a parent is a matter that must be determined by the court in each individual case and must be considered only as it affects the well-being of the children under all the circumstances.
The court is not unmindful of the paramount rights of a parent over that of nonparents. As has been so often determined, the primacy of parental rights may not be ignored. In no case may a contest between parent and nonparent resolve itself into a simple factual issue as to which party is better equipped to raise the children. Custody has been denied in those cases where the parent has abandoned or transferred the parental right either expressly or by implication. (People ex rel. Kropp v. Shepsky, 305 N. Y. 465; Matter of Bistany, 239 N. Y. 19; Matter of Bock, 280 N. Y. 349; Matter of Stuart, 280 N. Y. 245, supra.)
It appears therefore that the unwed father has a right to appear in this proceeding, to petition and to be heard. He is a proper party to a guardianship or custody proceeding wherein the mother of the out-of-wedlock child is deceased. It appears that the court may make a determination as to the fitness or unfitness of the unwed father, giving primary consideration to *1066 the welfare and hest interest of the minors involved, and giving due consideration to their wishes. In fact, special consideration should be given to those cases where it is the desire of the infants that someone other than a parent be appointed. (People ex rel. Glendening v. Glendening, 259 App. Div. 384, affd. 284 N. Y. 598; SCPA 1707.) If the choice was solely between institutional custody and parental custody then this court would be guided only by a finding of unfitness before awarding guardianship of the person to an institution.
The cases, particularly in view of the fine distinctions made in guardianship, custody and adoption proceedings, offer no magic formula. The determination to be made, particularly in a contested proceeding, is a very difficult and troublesome one. It is not simply a matter of deciding the rights of an infant as against the rights of a parent, or a simple distinction "between the rights of parents as opposed to the rights of nonparents, nor should it be assumed that a guardianship proceeding is tantamount to an adoption or habeas corpus proceeding. The issue is and of necessity must be what is in the best interest of the infants. That decision which will best tend to promote the welfare and well-being of the infants is the decision that somehow must be arrived at by this court. While the law must be served in considering the constitutional rights of the parents, whether wed or unwed, it is this court’s opinion that paramount consideration must be given to the well-being of the infants by virtue of SOPA 1707. Children, too, have constitutional rights that must be considered and protected.
In the instant case the court has had an extended hearing on two separate occasions and has determined the factual situation to be as follows:
The natural father, Alfonzo Morgan, pursuant to filiation proceedings instituted in Erie County Family Court, had been contributing to the support of the three infant children prior to his being laid off from work. The children, Beverly aged 12, Catherine aged 10 and Anthony aged 14, had been living with their mother in Buffalo since birth. For a period of approximately two years prior to 1967 the petitioner resided with them. For a period of five years thereafter the parents did not live together. The petitioner contends that all three of the children were supported by virtue of Family Court orders at a rate of $45 to $25 per week. He alleges further that he visited the children two or three times a week during the five-year period that he did not actually reside with them and the natural mother.
*1067 A sister of the children, Brenda Prince, 21 years of age, stated that she lived with her mother, the natural mother of the infants in question, up until December of 1970 when she left home because of marriage. She stated that the visitations alleged by the petitioner were at best irregular and caused a great deal of friction in the home, upsetting holidays and family gatherings. The petitioner contends that upon discovering that the natural mother was hospitalized, and about two days thereafter, he came to the mother’s home to stay with the children. The mother died about one month thereafter on March 11, 1972. The children continued to stay with the petitioner until April 5, 1972 when the three of them left to live with two sisters in Lackawanna, New York. The two sisters, Catherine and Beverly, were and still are living with a sister, Dolly Baker, a widow who has some small children of her own and who stated that since their last appearance in court (on May 22, 1972) the children have attended school regularly; that Beverly has been promoted to the seventh grade with a 75% average, in spite of several alleged occasions of tardiness. Catherine apparently has been promoted from the fourth grade but her report card was held up pending the return of a lost school book. Mrs. Baker testified that the children get along very well in her home, that they do chores as directed, and have no serious complaints. Mrs. Baker is receiving welfare assistance for these two children in the sum of $121 per month.
Another sister, Mrs. Abbie Barnes, stated that Anthony has been staying with her and that he is getting along very well with her children and her husband, despite petitioner’s claim to the contrary. She states that Anthony passed from the eighth grade to the ninth grade and will be attending junior high school in the fall. In her opinion Anthony will be better off in her home and she is willing to continue to have his care and custody.
The natural father has been unemployed since August, 1971, having been laid off from his place of employment, the Bethleham Steel Company, Lackawanna, New York. He alleges that his mother is now in her early sixties, is living in his home and is willing and able to take care of the children if he returns to work.
The court has given serious consideration to all the facts and circumstances herein. The decision to be made is a difficult one. Considering, however, the life style of the petitioner, his attitude toward the children, the visits made to the home of the children during the lifetime of the natural mother, and all *1068 the circumstances herein, this court cannot be satisfied that the best interest of these infants will be served by granting the relief prayed for. The conduct of the petitioner showed little stability and organization and a minimum of affection for the children.
The three children indicated on May 22, and again on July 6, that they preferred to stay with their sisters in Lackawanna. They have at all times lived as a family unit. They live within a block of each other in the City of Lackawanna and have resided there since several weeks after their mother’s death. They have apparently adjusted very well to their living conditions and have performed adequately in school. Under all the circumstances it would appear that the welfare and best interest of these minor children will be best served by permitting them to remain with their sisters.
This court is concededly influenced by the wishes of the children as expressed and re-expressed in open court. Again, it must be noted that the petitioner did not live with the natural mother for some five years prior to her death and only stayed with the children for a few weeks after the mother entered the hospital from an illness which eventually caused her death. The natural father is still single, and the care that would be required of his mother would create a severe burden upon her.
Therefore, pursuant to the discretion vested in this court by SOPA 1707, it is the decision of this court that the petitioner’s application for guardianship of the person and property of the three infants herein be denied and that letters of guardianship of the person and property of the infants, Catherine Morgan and Beverly Morgan, issue to Dollie Baker and that letters of guardianship of the person and property of the infant, Anthony Morgan, issue to Abbie Barnes.