OPINION OF THE COURT
Michael H. Feinberg, S.
In this proceeding, an administrator seeks the approval of a compromise of a personal injury/wrongful death case and seeks judicial settlement of his account. The application is granted to the extent that the monetary settlement is approved, the petitioner’s letters will be modified to permit execution of releases in favor of the defendants, and the requested fees and disbursements for the petitioner’s attorneys as well as the percentage allocation of the net proceeds for distribution to the distributees in accordance with Matter of Kaiser (198 Misc 582) shall be fixed as requested. A proposal whereby the petitioner shall create a structured payout of the shares allocated to the decedent’s infant children is specifically not approved in the form currently presented to the court. Pending submission of *977 an alternative plan, the children’s settlement funds shall be held in a guardianship account under joint control with the Clerk of the Court and the settlement of the petitioner’s accounting shall be held in abeyance.
The facts underlying this proceeding are as follows:
The decedent died on September 5, 1991 at age 29 as a result of alleged medical malpractice. The decedent left surviving the petitioner, her spouse, and three infant children, the youngest having been born just prior to decedent’s death. The action was settled before a Justice of the Supreme Court during jury selection for $2,100,000. The petitioner and the attorneys are to receive immediate lump-sum payments while the father seeks to invest, the children’s shares in a new type of structured settlement plan. It is this investment vehicle or “plaintiff-controlled structured settlement trust” which concerns the court and requires further discussion.
The commonly used structured settlement is a written obligation by a defendant (usually through its insurance company) to make deferred payment of monies over a prescribed period of time. The defendant’s obligations are fixed as to the amount and the time of future payments upon entering into the structured settlement agreement. Most structured settlements are financed by the defendant through its purchase of an annuity insurance policy. As an indicia of reliability, a rating report published by A.M. Best Co. evaluates life insurance companies. Their ratings are often utilized by the courts as a guide to evaluating whether a particular life insurance company is an appropriate choice to finance a selected structured settlement annuity.
The investment vehicle herein, a “plaintiff-controlled structured settlement trust”, is created after a plaintiff in a proceeding receives his or her settlement funds. In this case, the structured settlement trust (hereinafter referred to as the investment trust) is to be created as follows:
The petitioner, as father and natural guardian of the children (as of this date, the father has not obtained letters of guardianship over the property of the children), shall execute an assignment of the children’s monies to a national bank chosen to act as trustee. The trust is to be created by a national investment advisor company (hereinafter referred to as the Company). The Company has not been rated by A.M. Best Co. or by any other independent evaluation service. The Company will initially fund the investment trust with $10 prior to the trust receiving the assigned settlement funds. During the life *978 of the investment trust, the Company shall receive annual accountings, maintain the right to remove the trustee and, therefore, exercise a substantial degree of control over the investment trust. For these services, the Company will receive a fee of 4% of the assets or assigned funds placed into the trust.
The investment trust is irrevocable until its termination. The father has been given the discretion to choose the age at which each child’s trust is to terminate. He has chosen the age of 35 as the termination date of each investment trust. The beneficiary of each trust is not the infant, but rather, another inter vivos trust (hereinafter referred to as the pour-over trust). The pour-over trust is to be created by the petitioner, as father and natural guardian, with the trustee being the same bank as the trustee of the investment trust.
The investment trust assets are to be invested in a limited fashion, i.e., tax-free investment-grade municipal bonds. In view of this limitation, the trustee bank is not subject to the Prudent Investor Rule. In addition, the trustee shall not be liable for any actions taken “in good faith” and “with the exercise of reasonable care”. Annual accounts are required to be sent to the settlor (the Company) and the beneficiaries. However, as previously mentioned, the only beneficiary of the investment trust is, in fact, the pour-over trust for which the bank serves as trustee.
The trustee is also to be reimbursed from the trust assets for any and all expenses incurred in defending its actions as a trustee in any legal action that may be commenced on behalf of the beneficiary or any other party. If a successor trustee takes office upon the initial trustee’s resignation or removal, that successor is not required to investigate or audit the accounts of the departing fiduciary. Finally, all controversies relating to the investment trust are to be settled by arbitration.
The pour-over trust, which is the beneficiary of the investment trust, is to last for the lifetime of the child for whose benefit it has been created. However, the father may, at his discretion, revoke it before the child turns 18 or the child can revoke it upon reaching majority. Upon a revocation, the benefits payable from the investment trust and any assets held in the pour-over trust are to be paid to the party revoking the trust. Therefore, if the father revokes the trust, he would be the payee of the funds, rather than the infant beneficiary.
The court has been advised that the father, by choosing this investment product, had several financial goals in mind. *979 Firstly, he sought to prevent the dissipation of his children’s funds by placing the monies into irrevocable trusts until each child reaches the age of 35. Secondly, he wanted to invest the funds in a fashion which would take advantage of changing and possibly rising interest rates during the term of the investment period. Finally, he sought to avoid the temptation presented by the recent emergence of after-market annuity purchasing companies, which offer discounted, but immediate, cash payments in exchange for the termination of an annuity-based structured settlement.
While the court is sympathetic to the father’s objectives and concerns, the plan submitted contains too many provisions which conflict with various statutes and well-established principles governing the management of an infant’s funds and the court’s supervisory role over an infant’s affairs. For the reasons detailed below, the court cannot give its approval to the investment proposal at this time.
In the court’s view, the threshold issue presented herein is whether the petitioner, as father and natural guardian, is authorized to take control of his children’s wrongful death proceeds and invest them on their behalf. Generally, a parent, as a natural guardian, makes decisions about the management of a child’s property. However, if a child inherits a large asset or obtains an asset through a lawsuit, natural guardians do not have the right to manage it (Matter of Decker v Pouvailsmith Corp., 225 App Div 489, revd on other grounds 252 NY 1). In fact, SCPA 2220 (1) provides, in pertinent part, that “[w]here an infant * * * is entitled to money * * * or to the proceeds of a settlement of a cause of action * * * the decree or order shall direct that it be paid or delivered to the guardian * * * of the property of such person”. A guardian is defined in SCPA 103 (24) as “[a]ny person to whom letters of guardianship have been issued by a court of this state”.
Although a natural parent commonly applies and is approved for appointment as a guardian of the property of an infant, SCPA 1707 grants the Surrogate’s Court the discretion to determine who would serve the best interests of the child in the capacity of guardian. The fitness or unfitness of a parent is always a concern of the court in each case (Matter of Morgan, 70 Misc 2d 1063). Therefore, prior to implementing this or any other investment plan, it would be appropriate for the petitioner father to apply and qualify as the guardian of the property of each of his infant children.
The court’s next concern involves the amount of control that the father can exercise over the children’s assets and the length *980 of time over which he would be able to withhold their funds from them. SCPA 1707 (2) provides that the “term of office of a guardian of the person or property so appointed expires when an infant attains majority” which, in the State of New York, has been legislatively determined to be the age of 18. Therefore, upon turning 18, an infant is permitted to take control over his or her own funds. In this case, however, the father has been given the discretion to choose the termination date of each investment trust and has determined that each trust shall terminate upon the child’s 35th birthday. This permits him to exercise control over the funds until an age well past each child’s majority. The father has, in effect, placed a restraint upon each child’s access to their funds.
Undeniably, the ordinary structured settlement approved by the court always delays a child’s receipt of funds beyond his or her majority. However, such settlements are approved as the means for settling a civil litigation with an understanding that such are the terms upon which a defendant is conditioning the settlement. Here, the defendants are paying the entire settlement sum up front to the father who then invests the funds in a structured settlement instrument. Therefore, this case presents an issue concerning the propriety of the investment strategy chosen by the father, rather than a settlement proposal and, accordingly, it must be judged by a different standard.
It must be noted that the Surrogate’s Court can also use its discretion to restrict access to settlement proceeds where an infant’s best interests require it, such as when a supplemental needs trust is appropriate or when, pursuant to SCPA article 17-A, an infant is not expected to reach competence upon attaining majority. However, absent a showing that any of the infants herein lack the requisite mental capacity to handle their own finances pursuant to SCPA article 17-A or article 81 of the Mental Hygiene Law, the court cannot permit a restriction to access to settlement proceeds after an infant has reached the age of 18. The court’s approval of this investment trust would be tantamount to sanctioning a violation of SCPA 1707. Unless the Legislature determines that the age of majority is flexible and within the discretion of a parent or the court to decide, the court cannot usurp the power of the Legislature in this area.
A discussion of other objectionable provisions of the plan follows.
*981 The Trustee’s Standard of Care
Article IV (2) (c) of the investment trust requires the trustee to “endeavor” to use its “best efforts” to invest the trust funds in a series of investment-grade municipal bonds maturing over the course of several years. However, the identity of the specific bonds is not disclosed. Furthermore, the agreement in article IV (2) (d) provides that in the event that an appropriate selection of bonds is not available, the trustee may invest in investment-grade tax-exempt municipal money market funds. Clearly, the trustee has been afforded considerable latitude in choosing the investment vehicle.
When the Surrogate’s Court is involved in protecting a child’s assets, it customarily provides for the deposit of funds in FDIC-insured guardianship accounts. If a guardian seeks additional leeway in investing the funds, the guardian must be bonded. Still, as another alternative, SCPA 1708 provides a specific list of investments (including municipal bonds of the State of New York) that a fiduciary may purchase on behalf of an infant. These investments must be held in the custody of a bank or financial institution subject to order of the court. In this case, however, it is noted that no party is required to be bonded. The trustee has flexible guidelines for investing the funds and, according to various terms of the trust, the court may have no effective way of supervising these accounts in the future. All of these factors serve to create a substantial risk to the children’s funds. Therefore, by approving the lesser standard of care outlined in the investment trust, the court would be undermining the mandates of SCPA article 17 which, by its specificity, was designed to protect the wards of this court.
Resignation and Removal of Trustees
Article VI (A) of the investment trust provides that the trustee may resign without court approval upon 60 days’ notice to the settlor and that the Company may remove the trustee without court application or consent. In addition, the successor trustee is not required to investigate or audit the accounts or acts of the prior trustee.
The power to resign and/or remove the trustee without court approval eliminates the court’s right to oversee the selection of a fiduciary. Misconduct by a prior trustee may never be addressed or even discovered due to the lax standard placed upon the successor trustee.
*982 Liability and Dispute Resolution
Article IV (F) (b) provides that a trustee is not liable if the issuer of a municipal bond fails to pay. This provision absolves the trustee for his failure to use reasonable care or even “best efforts” in choosing an appropriate bond for investment. EPTL 11-1.7 provides that it is contrary to public policy to exonerate an executor or testamentary trustee from liability for failure to exercise reasonable care, diligence and prudence. Although the trustee herein would be administering an inter vivos trust rather than a testamentary trust, the court finds that the exoneration provision in the agreement clearly violates public policy as well as the standard of care established for fiduciaries.
Article VIII of the trust agreement provides that “disputes, differences, claims and controversies * * * shall be settled by means of arbitration.” This deprives the Surrogate’s Court of jurisdiction over litigation concerning the infants’ funds. It serves to nullify the court’s ability to protect the assets and best interests of the children.
Approval of Accounts
According to article IV (E) of the agreement, the trustee of the investment trust must provide an annual “informal account” of the transactions affecting the trust. The report is to be mailed to the beneficiary (the pour-over trust) and the settlor (the Company). Written objection by the infant or his guardian must be given within 60 days or the informal account will be deemed approved.
Inasmuch as the account is not required to be served upon the infant and/or the guardian of the property, their approval or disapproval may not even be obtained. Even if the account were to be sent to the guardian, it is unknown whether the petitioner is in a position to understand a sophisticated financial áccounting. Unfortunately, these accounting procedures create a scenario whereby an unsophisticated investor may bind his or her child to an unsatisfactory investment vehicle for a period exceeding his or her majority.
Finally, in this regard, pursuant to SCPA 1719, a guardian, who holds an infant’s property under bond, must file an annual accounting with the court in order to monitor the guardian’s expenditures and protect the child’s interests. Once again, by failing to require service of the accounting upon the court, the trust agreement has disregarded the intent of the Legislature and eliminated the role and responsibility of the court.
*983 The Pour-Over Trust
Paragraph 9 of the pour-over trust provides that the grantor, or in this case, the father, may revoke the pour-over trust at any time without the consent of the trustee or beneficiary. In the event of revocation, the trustee must then transfer and pay over the infant’s assets to the grantor. Therefore, if the father chooses to revoke the pour-over trust prior to any of his children reaching the age of 18, the father would be the payee of the funds, rather than the infant. While it is true that under a generally worded provision in paragraph 2 of the instrument, the father’s exercise of this power is intended to be subject to a court’s approval, the agreement fails to identify such court as Surrogate’s or any court of this State. Clearly, this provision might allow the father to take control of the infant’s funds at his whim or discretion without applying to the court for approval. This is in direct contravention to SCPA 1713 which provides for the authority and discretion of the court to allow the withdrawal and application of an infant’s funds. In view of the conservative approach utilized when applying this statute to assess the reasonableness of withdrawals of guardianship funds, the instrument once again violates the intent of the SCPA.
Conclusion
The Surrogate’s Court is bound to protect infants who are their wards (Greenburg v New York Cent. & Hudson Riv. R. R. Co., 210 NY 505). “While the court does not presume to be more skilled or expert than a professional portfolio manager with regard to the determination of the most financially lucrative investment portfolio, it remains the court’s responsibility to insure that the infant’s settlement proceeds are protected” (Donato v Gonzalo, 145 Misc 2d 304, 306). In assessing the propriety of an investment, the primary consideration is to preserve the funds for the use and benefit of the infant until he or she attains majority (SCPA 1728; Hilgarth v Costello, 132 Misc 2d 1020). Under the present status of the law, a desire to obtain a higher rate of return of an infant’s investments is of secondary importance (Hilgarth v Costello, supra).
The court’s constraints regarding investment alternatives, combined with the limited emphasis placed upon maximizing the yield of invested funds, has served to create an unpleasant reality which the courts will certainly face with increasing frequency. One need only listen to a daily newscast or open to the financial pages of any of the print media to learn of the *984 recent record-breaking days on Wall Street, as well as the positive prospects for our economy and financial markets. As a result, it is only natural that parents or guardians will seek to achieve the best return for their ward’s investment dollars. Due to the limited investment options set forth in the SCPA, it is clear that new types of investment products, seeking to take advantage of our “bullish” stock, bond and other financial markets, will continue to be submitted for approval before the court. Keeping this in mind, the court does not find fault with the attempt by petitioner or his counsel to place the children’s funds into what they feel would be a safe, appropriate and perhaps, high-yielding investment alternative. The court also understands petitioner’s concerns that an 18 year old may be unable or ill-prepared to manage large sums of money. However, in spite of the court’s empathy for petitioner and his views, the court is unable to allow petitioner to have access to his children’s funds past their age of majority while investing them in a manner which has not been sanctioned by statute. As new investment proposals continue to appear before the court, the Surrogate cannot, without direction from the Legislature, permit the significant erosion of the statutory standards set forth in the SCPA and EPTL. For all the reasons outlined above, the court does not approve the use of the investment plan submitted for the children’s funds.
Petitioner shall apply for letters of guardianship over the property of his children within 30 days of the date of this decision. Petitioner shall also submit an alternative investment proposal and amended accounting within the same time period.