OPINION OF THE COURT
John B. Riordan, S.
*633 This is an application to renounce infants’ shares pursuant to EPTL 2-1.11. The petitioner is Walter Carucci, the father and guardian of the property of the infants, Joseph Carucci, who is 16 years old, and Grace Carucci, who is 12 years old. The petitioner’s brother, Mitchell Carucci, joins in the application.
The infants’ grandmother, Clara Carucci, died on August 15, 2002. She was survived by two children, Walter Carucci and Mitchell Carucci. Her last will and testament dated February 1, 1996 bequeaths one share each (or 10%) of the Carucci family partnership to the infants and one share to Mitchell Carucci. The Carucci family partnership is an investment partnership in which Clara Carucci’s estate owned 30% Mitchell Carucci owns 30% and Walter Carucci owns 40%. Thus, in accordance with the terms of Clara Carucci’s will, the partnership would be held as follows: Walter Carucci — 40%; Mitchell Carucci — 40%; Joseph Carucci — 10%; and Grace Carucci — 10%. The value of one share (10%) of the Carucci family partnership is approximately $934,027.
The petitioner proposes to have the infants renounce their shares which would save the children, according to the petitioner, approximately $422,685 in generation skipping taxes. If the renunciation is not allowed, the infants’ shares would be subject to generation skipping taxes and as a result would be valued at approximately $722,684.50. Petitioner further believes that the renunciation would be in the infants’ best interest as the share that they would ultimately receive, through their grandmother’s residuary estate and through a gift from the petitioner and his wife, would be held in trust for them as opposed to being held by the infants outright upon their attaining age 18.
The petitioner proposes the following series of transactions to effectuate the infants’ renunciations. First, the infants through their guardian would renounce their shares. Although the petitioner believes that the infants’ renounced shares would pass to Mitchell Carucci, the infants’ renounced shares would become part of the residuary estate which is left to Mitchell Carucci and Walter Carucci, in equal shares. The petitioner further proposes that Mitchell Carucci renounce 50% of the property the infants renounced. The petitioner, Walter Carucci, in turn, will “disclaim an amount equal to the maximum GST (Generation Skipping Tax) exemption available to the estate less any prior allocations of GST exemption” which totals $600,000, according to the petitioner. The sum of $600,000 *634 would then pass, in trust, to the infants. The end result of the renunciations is that Walter Carucci, the infants’ father, would own 60% of the partnership and Mitchell Carucci would own 40%.
The petitioner further proposes to make a gift, together with his wife, of a total of $1,268,054 to the children. This amount would be added to the residuary trust for the benefit of the infants or the monies would be used to fund a separate trust set up by the petitioner and his wife for the benefit of the infants. In summary, as a result of the renunciations and gifts, the infants would receive a combined total of $1,868,054. If the renunciations are not allowed, the infants will receive the shares in the family partnership valued at approximately $1,445,369 after taxes, outright at age 18.
The guardian ad litem, after extensive analysis, does not recommend the approval of the instant application. She raises the following objections: first, the renunciations would not qualify as qualified disclaimers under the Internal Revenue Code as the infants are receiving consideration and thus accepting the benefits in return for the disclaimed property; second, the renunciations by the petitioner and his brother would not constitute qualified disclaimers because they were not made within nine months of the decedent’s date of death and federal law does not provide for an extension; third, the Internal Revenue Code allows the infants to disclaim within nine months of their twenty-first birthday; and finally, the law allows outright distribution of property to infants at the age of 18 and establishing a trust may not, as a matter of law, be beneficial to the infants.
EPTL 2-1.11 (c) provides that a guardian may renounce on behalf of an infant, when authorized by the court. The renunciation “shall be accompanied by an affidavit of the renouncing party that he has not received and is not to receive any consideration in money or money’s worth for such renunciation from a person or persons whose interest is to be accelerated, unless payment of such consideration has been authorized by the court” (EPTL 2-1.11 [b] [2]). Here, the infants are clearly receiving consideration in monies’ worth from the petitioner whose interest in the family partnership will be accelerated and increased.
Where a guardian asks for permission to renounce on behalf of an infant, “there must be a showing that the renunciation would be directly advantageous to him and not merely to the parent” (Matter of DeDomenico, 100 Misc 2d 446, 447 [1979]). *635 Moreover, “[a] court cannot sanction an infant foregoing the right to receive something of value without the infant receiving commensurate consideration” (Matter of Kramer, 101 Misc 2d 782, 784 [1979]). As the infant in Kramer did not have a vested interest in the estate, the court did not have to decide whether the infant received adequate consideration (Matter of Kramer, 101 Misc 2d 782, 784 [1979]). The petitioner argues that the renunciation in question is directly advantageous to the infants as the infants share which will consist of $600,000 from the residuary and the additional $1,268,054 in gifts given to the infants from the petitioner and his wife will be larger as a result of the tax savings. The petitioner, however, does not factor into his analysis that his proposed plan will materially alter the decedent’s testamentary plan and will directly benefit the petitioner by giving him an increased interest in the partnership.
There is a paucity of reported decisions where the courts have authorized the payment of consideration on behalf of an infant or an adult in exchange for a renunciation. The few reported decisions in which courts authorized adults to accept consideration do not explain why consideration was authorized (see, e.g., Matter of Platzker, NYLJ, May 12, 1995, at 32, col 5; Matter of Gardiner, NYLJ, July 22, 1991, at 26, col 2). With regard to infants, Matter of Poliakoff (NYLJ, Mar. 20, 1995, at 29, col 2) is frequently cited as authority for the proposition that renunciations by infants will be authorized where the infant receives value (i.e., consideration) in exchange for the renunciation[1] (see, Turano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 2-1.11). Yet Matter of Poliakoff (NYLJ, Mar. 20, 1995, at 29, col 2) did not involve a guardian renouncing an infant’s interest, rather, the executor sought to renounce the decedent’s interest in his predeceased wife’s estate. A child, who was not a beneficiary of the wife’s estate would have been harmed by the renunciation, so the court allowed the child to be compensated for any loss he would suffer.
In the only reported decision where a question arose as to whether an infant was impliedly receiving consideration in exchange for his renunciation, the court denied the application *636 because the renunciation did “not appear [to] be effective for tax purposes” (Matter of DeDomenico, 100 Misc 2d 446, 448 [1979]).
Although the petitioner believes that this court is without authority to consider whether a renunciation will comply with federal laws[2] and hence should not consider the DeDomenico case as controlling, the court is compelled to “consider any matter which may affect the ward’s welfare, including the possible future legal consequences of a fiduciary’s proposed course of action” (Matter of Scrivani, 116 Misc 2d 204, 207 [1982]). As one of the purported reasons for exercising the renunciation is to increase tax savings, part of the analysis must include a discussion of whether the disclaimer will be considered to be a qualified disclaimer under the Internal Revenue Code. Further, the court must carefully consider all aspects of the renunciation because once authorized, the renunciation is irrevocable (EPTL 2-1.11 [f]; Matter of Munch, 125 Misc 2d 610 [1984]).
The Internal Revenue Code provides that in order for a disclaimer to be qualified for tax purposes, the disclaiming person must set forth that “such person has not accepted the interest or any of its benefits” (Internal Revenue Code [26 USC] § 2518 [b] [3]). The regulations provide that a “qualified disclaimer cannot be made with respect to an interest in property if the disclaimant has accepted the interest of any of its benefits, expressly or impliedly, prior to making the disclaimer” (26 CFR 25.2518-2 [d]). In the instant proceeding, there is no question that the infants would receive consideration in exchange for their renunciation. As a result, the requested renunciations do not appear to be effective for tax purposes. Therefore, the infants’ shares will most likely be assessed his or her portion of the generation skipping tax, regardless of whether the renunciation is allowed. The petitioner is not without recourse, however, as infants may renounce within nine months of turning 21 (26 CFR 25.2518-2 [c] [1] [ii]; [d] [3]).
*637 The petitioner’s final argument is that the decedent did not intend to leave the infants’ shares of the estate outright and instead intended to have the infants’ shares held in trust until the infants turn 30. The petitioner is, in essence, asking the court to reform the will. A court will sometimes allow a reformation of a will to achieve tax savings where the intention of the testator is plain and unambiguous and the reformation will not in any way alter the testator’s dispositive scheme (Matter of Choate, 141 Misc 2d 489, 493 [1988]). Here, the exercise of the renunciation will result in an altered ownership of the family partnership, which is direct contrast to what the testator set forth in her last will and testament. Moreover, the court “cannot permit a restriction of access to . . . proceeds after an infant has reached the age of 18” (Matter of Mede, 177 Misc 2d 974, 980 [1998]).
For all of these reasons, the application for authorization for the guardian to renounce the infants’ share is denied.
The guardian ad litem filed an affidavit of legal services. In fixing fees, the court is required to consider the various criteria including the size of the estate, the nature and extent of the work performed, the difficulties involved and the results achieved (Matter of Freeman, 34 NY2d 1 [1974]; Matter of Potts, 123 Misc 346 [1924], affd 213 App Div 59 [1925], affd 241 NY 593 [1925]). Based on a review of the various criteria mentioned above, the guardian ad litem’s fee is fixed in the amount of $8,000 for all services rendered.

. Also frequently cited is Matter of Barr (NYLJ, Dec. 26, 1979, at 12, col 3), where the court allowed a guardian to renounce on behalf of children a portion of the share of monies passing to them by operation of law and to retain a portion of the funds. The renunciation was authorized as the “children are not being paid sums for their renunciation ...” (id.).

. The petitioner also argues that this court is not authorized to consider whether the proposed renunciations would comply with the Internal Revenue Code as that is a decision for the Internal Revenue Service (IRS) to decide. The petitioner further argues that the IRS, in turn, must follow state law with regard to whether the property interest was properly renounced. The long-standing rule in federal tax cases, however, is that “although state law creates legal interests and rights in property, federal law determines whether and to what extent those interests will be taxed” (United States v Irvine, 511 US 224, 238 [1994]).