[978 NE2d 1254, 954 NYS2d 784]

In the Matter of Peter J. Galasso (Admitted as Peter John Galasso), an Attorney, Appellant. Grievance Committee for the Ninth Judicial District, Respondent.

Argued September 11, 2012; decided October 23, 2012

## POINTS OF COUNSEL

*Galasso, Langione, Catterson & LoFrumento, LLP*, Garden City (*Jeffrey L. Catterson* of counsel), and *Moran Karamouzis LLP*, Rockville Centre (*Grace D. Moran* of counsel), for appellant. I. The Appellate Division's order should be reversed because it impermissibly imposes strict or vicarious liability on an attorney for funds criminally stolen by an employee despite the attorney's appropriate supervision and oversight of the account. (*Adams v New York City Tr. Auth.*, 88 NY2d 116; *Carnegie v J.P. Phillips, Inc.*, 28 AD3d 599; *Oliva v City of New York*, 297 AD2d 789; *Woods v MONY Legacy Life Ins. Co.*, 84 NY2d 280; *Baquerizo v Monasterio*, 90 AD3d 587.) II. The Appellate Division's order should be reversed because attorneys should not be deemed insurers of their escrow accounts. III. The disciplinary rules and procedures deprive attorneys of their constitutional rights to due process and equal protection. IV. The Appellate Division's order should be reversed because it erroneously sustained the charges against appellant and the Court

abused its discretion as a matter of law in suspending appellant. (*Matter of Holtzman*, 78 NY2d 184; *Grombach Prods., Inc. v Waring*, 293 NY 609; *Schank v Schuchman*, 212 NY 352; *American Sur. Co. v Conner*, 251 NY 1; *Paramount Film Distrib. Corp. v State of New York*, 30 NY2d 415; *Matter of Fine*, 263 AD2d 262; *Matter of Casano*, 280 AD2d 86; *Matter of O'Reilly*, 91 AD3d 191; *Matter of Fonte*, 75 AD3d 199; *Matter of Duboff*, 21 AD3d 206.)

*Gary L. Casella*, White Plains (*Matthew Lee-Renert, Faith Lorenzo* and *Antonia Cipollone* of counsel), for respondent. I. Appellant was disciplined for his own professional misconduct. (*Matter of Rowe*, 80 NY2d 336; *Matter of Loughlin*, 124 AD2d 925; *Matter of Rogers*, 94 AD2d 121; *Matter of Raines*, 38 AD2d 459; *Matter of Allen*, 308 AD2d 143; *Matter of Linn*, 200 AD2d 4; *Matter of Sykes*, 150 AD2d 126; *Matter of Pollack*, 142 AD2d 386; *Matter of Ponzini*, 259 AD2d 142, 268 AD2d 478; *Matter of Cardoso*, 152 AD2d 157.) II. Appellant was guilty of professional misconduct irrespective of his ability to make restitution. (*Matter of Feiden*, 29 AD3d 115; *Matter of Ryan*, 264 AD2d 128; *Matter of Ciacci*, 275 AD2d 19; *Matter of Fitzgerald*, 279 AD2d 160.) III. Appellant was disciplined following a full and fair proceeding which was consistent with his constitutional rights to due process and equal protection. (*Matter of Kelly*, 23 NY2d 368; *Gerzof v Gulotta*, 87 Misc 2d 768; *Matter of Echeles*, 430 F2d 347; *Mildner v Gulotta*, 405 F Supp 182; *Matter of Maddox*, 157 AD2d 244.) IV. Appellant's violations of the disciplinary rules are established by the record and the discipline imposed is consistent with prior disciplinary cases. (*Matter of Kelly*, 23 NY2d 368; *Matter of Mix*, 274 NY 183; *Matter of Hawes*, 217 NY 602; *Matter of Fonte*, 75 AD3d 199; *Matter of Laudonio*, 75 AD3d 144; *Matter of Holtzman*, 78 NY2d 184; *Matter of Cooperman*, 83 NY2d 465; *Matter of Davidson*, 11 AD3d 11; *Matter of Westfal*, 263 AD2d 259; *Matter of Walker*, 113 AD2d 254, 67 NY2d 917.) V. Appellant is seeking to lower the standards of attorney professionalism. (*Meinhard v Salmon*, 249 NY 458; *Matter of Cooperman*, 83 NY2d 465.)

*Glenn S. Koopersmith*, Garden City, for Nassau County Bar Association, amicus curiae. This Court should reverse the order on appeal which seemingly imposes a strict liability standard upon every attorney maintaining an escrow account. (*Matter of Holtzman*, 78 NY2d 184; *Matter of Forman*, 250 AD2d 116.)

*Law Offices of Thomas F. Liotti*, Garden City (*Thomas F. Liotti* of counsel), amicus curiae. I. Appellant has violated rule

1.3 (a), (b) and (c) of the Rules of Professional Conduct (22 NYCRR 1200.0). (*Matter of Lowenthal*, 132 AD2d 117; *Matter of Galluscio*, 42 AD3d 264.) II. Appellant has violated rule 1.15 of the Rules of Professional Conduct (22 NYCRR 1200.0). (*Matter of Gambino*, 205 AD2d 212; *Matter of Fonte*, 75 AD3d 199.) III. Appellant has violated rule 3.3 of the Rules of Professional Conduct (22 NYCRR 1200.0). IV. Appellant has violated rule 3.4 of the Rules of Professional Conduct (22 NYCRR 1200.0). V. Appellant has violated rule 4.1 of the Rules of Professional Conduct (22 NYCRR 1200.0). (*Matter of Lowell*, 14 AD3d 41, 4 NY3d 846, 5 NY3d 708.) VI. Appellant has violated rule 4.4 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0). VII. Appellant has violated all of rule 5.3 of the Rules of Professional Conduct (22 NYCRR 1200.0). (*Matter of Jayson*, 3 AD3d 80; *Matter of Iaquinta-Snigur*, 30 AD3d 67.) VIII. The discipline imposed is not comparative in that it is far too lenient given the appellant's misconduct. (*Matter of Sherman*, 235 AD2d 60; *Matter of Galluscio*, 42 AD3d 264; *Matter of Gould*, 45 AD3d 223.)

## OPINION OF THE COURT

Per Curiam.

Petitioner instituted a disciplinary proceeding against respondent attorney Peter J. Galasso alleging 10 charges of professional misconduct. The essence of the petition is that respondent failed to properly supervise the firm's bookkeeper resulting in the misappropriation of client funds and that he breached his fiduciary duty by failing to safeguard those funds. Although we find the bulk of the charges were properly sustained, we modify to dismiss the charge alleging respondent's failure to timely comply with the lawful demands of the Grievance Committee.

At all times relevant to this appeal, respondent has been a partner of the law firm known as Galasso & Langione, LLP (the Galasso Langione firm).[1] Anthony Galasso, respondent's brother, was also employed by the firm and had, over the course of several years, worked his way up from an entry-level position as a file clerk and messenger to become the firm's bookkeeper and office manager.

In June 2004, respondent represented Steven Baron in a matrimonial action commenced by Wendy Baron. The parties and their attorneys entered into an escrow agreement through which

---

1. The firm was subsequently known as Galasso, Langione & Botter, LLP and is currently known as Galasso, Langione, Catterson & LoFrumento, LLP.

respondent was the designated escrow agent for the proceeds from a sale of commercial property owned by Steven Baron. Respondent agreed to hold the sum of $4,840,862.34 in an interest-bearing escrow account, pending further order of Supreme Court in the matrimonial action. Anthony Galasso, in his capacity as office manager, deposited the funds into an escrow account at Signature Bank (the Baron escrow account). Respondent and fellow partner James Langione were the only authorized signators on the account application. However, Anthony Galasso apparently altered the application to permit electronic fund transfers and to include himself—a nonlawyer—as a signator.

Between June 23, 2004 and January 17, 2007, Anthony Galasso transferred approximately $4,501,571 from the Baron escrow account into six other firm accounts maintained at Signature Bank through the use of roughly 90 Internet transfers. It seems that the Baron funds were used to replace money that Anthony Galasso had already removed from the firm accounts. Transferred funds from the Baron escrow account were then disbursed to respondent, firm employees and other entities in the course of business, all without the knowledge of the firm's principals or the consent of the Barons. In particular, approximately $360,000 in funds transferred from the Baron escrow account were used to finance the purchase of the firm's office condominium. To escape detection, Anthony Galasso had the genuine Baron escrow account statements, generated by the bank, diverted to a post office box and fabricated false statements for review by the firm. Although the Barons demanded payment of the funds held in escrow, more than $4.3 million remains due and owing to them.

In June 2006, the Galasso Langione firm received $800,000 on behalf of the Estate of George Carroll in settlement of a medical malpractice/wrongful death action and Anthony Galasso deposited the funds into the firm's IOLA (Interest on Lawyer Account) at M&T Bank. The following month, the firm received $175,000 on behalf of Adele Fabrizio in connection with a personal injury action. Anthony Galasso also deposited these funds into the firm's M&T IOLA. Anthony Galasso misappropriated the bulk of these funds by forging the partners' signatures on IOLA checks. With respect to the IOLA, respondent's practice had been to review monthly financial reports generated by Anthony Galasso, rather than the account statements themselves. To date, despite the clients' demands for the

return of their funds, the firm has returned only $85,791.36 to the Estate of Carroll; no funds have been returned to Fabrizio.

Anthony Galasso confessed to the theft of the above funds on January 18, 2007 and ultimately pleaded guilty to two counts of grand larceny in the first degree, 10 counts of falsifying business records in the first degree and 10 counts of criminal possession of a forged instrument in the second degree. He was sentenced to 2¹/₂ to 7¹/₂ years' imprisonment, as well as $2,000,000 in restitution. Respondent cooperated fully with the criminal investigation. Indeed, the Nassau County District Attorney's Office submitted a letter to the Grievance Committee providing its conclusions that no one else in the firm had had knowledge of the theft and that nothing in the documents presented to the firm by Anthony Galasso would have raised any suspicion regarding the accounts. Respondent has also commenced civil suits against the banks involved, in an attempt to recover the client funds.

As noted above, the Grievance Committee commenced a disciplinary proceeding against respondent alleging 10 charges of professional misconduct.[2] The matter was referred to a Special Referee who sustained all 10 charges. The Appellate Division granted the Committee's motion to confirm the Referee's report and denied respondent's cross motion to disaffirm

2. Charges one, two, seven and nine allege that respondent breached his fiduciary duty to pay or deliver escrow funds, by failing to safeguard client funds and by failing to promptly pay or deliver those funds to the person entitled to them (Code of Professional Responsibility DR 9-102 [a], [c] [4]; DR 1-102 [a] [7] [22 NYCRR 1200.46 (a), (c) (4); 1200.3 (a) (7)]; now Rules of Professional Conduct [22 NYCRR 1200.0] rules 1.15 [a], [c] [4]; 8.4 [h]).

Charges 6, 8 and 10 allege that respondent failed to supervise a nonlawyer employee resulting in the misappropriation of client funds (Code of Professional Responsibility DR 1-104 [d] [2] [22 NYCRR 1200.5 (d) (2)]; now Rules of Professional Conduct [22 NYCRR 1200.0] rule 5.3 [b] [2] [i], [ii]).

Charge three alleges that respondent was unjustly enriched by use of the Baron funds for his personal benefit (Code of Professional Responsibility DR 9-102 [a]; 1-102 [a] [5], [7] [22 NYCRR 1200.46 (a); 1200.3 (a) (5), (7)]; now Rules of Professional Conduct [22 NYCRR 1200.0] rules 1.15 [a]; 8.4 [d], [h]).

Charge four alleges that respondent failed to provide appropriate accounts to the Barons with respect to their escrow funds (Code of Professional Responsibility DR 9-102 [c] [3]; 1-102 [a] [7] [22 NYCRR 1200.46 (c) (3); 1200.3 (a) (7)]; now Rules of Professional Conduct [22 NYCRR 1200.0] rules 1.15 [a]; 8.4 [h]).

Charge five alleges that respondent failed to timely comply with the lawful demands of the Committee (Code of Professional Responsibility DR 1-102 [a] [5], [7] [22 NYCRR 1200.3 (a) (5), (7)]; Rules of Professional Conduct [22 NYCRR 1200.0] rule 8.4 [d], [h]).

the report (94 AD3d 30 [2d Dept 2012]). The Court also suspended respondent from the practice of law for a period of two years. This Court granted respondent leave to appeal, and we now modify.

Few, if any, of an attorney's professional obligations are as crystal clear as the duty to safeguard client funds. Rather than establishing a new or heightened degree of liability for attorneys, we find that the Appellate Division's determination is completely consistent with existing standards pertaining to the safeguarding and oversight of client funds. In other words, "a reasonable attorney, familiar with the Code and its ethical strictures, would have notice of what conduct is proscribed" (*Matter of Holtzman*, 78 NY2d 184, 191 [1991]).

Respondent is not bound to his clients solely by the contractual language of the escrow agreement, but also by a fiduciary relationship. "A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior" (*Meinhard v Salmon*, 249 NY 458, 464 [1928]; *see Matter of Wallens*, 9 NY3d 117, 122 [2007]). Respondent owed his clients a high degree of vigilance to ensure that the funds they had entrusted to him in his fiduciary capacity were returned to them upon request. To that end, implementation of any of the basic measures respondent has since adopted—personal review of the bank statements, personal contact with the bank and improved oversight of the firm's books and records—likely would have mitigated, if not avoided, the losses.

Here, although respondent himself did not steal the money and his conduct was not venal, his acts in setting in place the firm's procedures, as well as his ensuing omissions, permitted his employee to do so. Moreover, the Baron funds were used for the benefit of respondent and the firm. That respondent has acted without venality can be a factor considered in mitigation, but is not probative of whether he has failed to preserve client funds (*see e.g. Matter of Wilkins*, 70 AD3d 1119, 1119-1120 [3d Dept 2010]; *Matter of Abato*, 51 AD3d 225, 228 [2d Dept 2008]).

Unquestionably, Anthony Galasso had devised a relatively sophisticated system and his fraud went undetected by the attorneys and accountant reviewing the documents he produced. However, respondent ceded an unacceptable level of control over the firm accounts to his brother, thereby creating the opportunity for the misuse of client funds. Had respondent been

more careful in supervising the accounts and his employee, he would have been aware of the malfeasance at a much earlier time when he could have substantially mitigated the losses.

It cannot be said that there were no warning signs here. Specifically, a nearly $5,000 "discrepancy" in the escrow account was noted by Baron's accountant, which respondent permitted Anthony Galasso to resolve with the bank. Anthony Galasso then corrected the "discrepancy" on a fabricated account statement by showing an Internet transfer of funds from the firm IOLA to the Baron escrow account. In addition, when asked to obtain a $100,000 check from the escrow account payable to Wendy Baron, Anthony Galasso produced a check from the IOLA, which respondent then signed and provided to Mrs. Baron. The fabricated statement for the escrow account later reflected an expenditure of $100,000 by check number 1738, despite the fact that no checks had been written on the escrow account.

A discrepancy in an escrow account should, at a minimum, be alarming to a reasonably prudent attorney. This is not to say that attorneys are prohibited from delegating certain tasks to firm employees, but any delegation must be made with an appropriate degree of oversight. We stress that it is the ethical responsibility of the attorney—not the bookkeeper, the office manager or the accountant—to safeguard client funds.

To be clear, respondent is not being held responsible for the criminal behavior of his brother. Rather, it is his own breach of his fiduciary duty and failure to properly supervise his employee, resulting in the loss of client funds entrusted to him, that warrant this disciplinary action. We find that charges 1 through 4 and 6 through 10 were properly sustained.

Respondent was also charged with the failure to timely comply with the Grievance Committee's lawful demands for information (charge five) in violation of former DR 1-102 (a) (5) and (7) and Rules of Professional Conduct (22 NYCRR 1200.0) rule 8.4 (d) and (h). Petitioner maintains that, between May 12, 2008 and July 22, 2009, it made repeated requests for information to which respondent failed to fully and timely respond and that respondent's conduct impeded and delayed its investigation.[3]

We find the imposition of the separate charge on this basis to be unsupported by the record. It is difficult to characterize

---

**3.** In particular, the Grievance Committee took issue with the responses to its requests seeking: (1) a forensic examination conducted by outside

*(n. cont'd)*

respondent's overall participation in the disciplinary process as anything other than active. Both respondent and his counsel were in regular correspondence with the Grievance Committee and provided copious documentation in response to its requests. When particular demands could not be immediately met, respondent generally acknowledged same, explained why and stated his intention to provide the information at the earliest opportunity. Under these particular circumstances, we find that respondent's level of compliance with this investigation is inconsistent with a sustained charge of failure to timely comply with the Committee's lawful demands. Upon remittal, the Appellate Division should reconsider whether the suspension previously imposed remains an appropriate sanction.

Accordingly, the order of the Appellate Division should be modified, without costs, by dismissing charge five of the petition and remitting the matter to that Court for further proceedings in accordance with this opinion and, as so modified, affirmed.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur in per curiam opinion.

Order modified, etc.

accountants to audit all Galasso & Langione firm bank accounts in the relevant time period; (2) an accounting to trace all disbursements from the Baron escrow account; (3) detailed bookkeeping records for the firm's Signature Bank and M&T IOLA accounts; and (4) copies of documents relating to the financing and purchase of the office condominium.