[11 NYS3d 268]

In the Matter of James D. Castelli (Admitted as James E. Daguanno), an Attorney, Respondent. Grievance Committee for the Tenth Judicial District, Petitioner.

Second Department, July 1, 2015

**APPEARANCES OF COUNSEL**

*Mitchell T. Borkowsky*, Hauppauge (*Michael Fuchs* of counsel), for petitioner.

*McDonough & McDonough, LLP*, Garden City (*Chris McDonough* of counsel), for respondent.

**OPINION OF THE COURT**

Per Curiam.

The Grievance Committee for the Tenth Judicial District served the respondent with a verified petition, dated December 31, 2013, containing four charges of professional misconduct. After a preliminary conference on June 10, 2014, and a hearing on August 7, 2014, the Special Referee sustained charges two, three and four, but did not sustain charge one. The petitioner now moves to confirm in part, and disaffirm in part, the Special Referee's report, and to impose such discipline on the respondent as this Court deems appropriate. In response, the respondent, by his attorney, requests this Court to affirm the report of the Special Referee, and to impose a sanction no greater than a public censure. We find that the Special Referee properly sustained charges two through four. However, we find that the Special Referee improperly declined to sustain charge one, and that charge one should have been sustained, based upon the evidence adduced.

Charges one through four emanate from a common set of facts. Based upon the respondent's admissions, his sworn testimony, and the evidence adduced, the facts are as follows:

### Duties Delegated to a Nonlawyer

In or about January 2012, the respondent practiced law as the Castelli Law Group from two New York offices; one in East Meadow and the other in Brooklyn. In or about January or February 2012, the respondent hired Gene Taradash (hereinafter Taradash) as a paralegal for the Brooklyn office. The re-

spondent knew that Taradash was not admitted to practice law in New York State when he hired him.

The respondent permitted Taradash to use business cards that identified the firm as "Castelli Law Group," without indicating that Taradash was a paralegal for the firm. The respondent authorized Taradash to conduct intake interviews, explain legal procedures as well as fee arrangements with clients, enter into retainer agreements using the respondent's signature stamp (hereinafter the signature stamp), prepare pleadings, with the authority, on occasions, to sign the pleading using the signature stamp, prepare and send letters to insurance carriers, and discuss settlement offers with insurance carriers and clients. Concerning matters emanating from the Brooklyn office, the respondent did not speak with the clients before approving the pleadings prepared by Taradash, and he did not entertain settlement discussions with the insurance carriers.

Concerning the respondent's law office bank accounts, he maintained an attorney trust account at CitiBank, which was used exclusively for the respondent's East Meadow office. The respondent maintained an IOLA account at Sovereign Bank, entitled "Castelli Law Group PLLC," bearing account No. xxxxxx0645 (hereinafter the IOLA account), which was used exclusively for the Brooklyn office. The respondent also maintained a business account at Sovereign Bank (hereinafter the Sovereign business account).

Although the respondent was the sole signatory on the IOLA account, he authorized Taradash to use his signature stamp to sign settlement checks and deposit them in the IOLA account, as well as to issue IOLA account checks to clients when disbursing their settlement proceeds. Utilizing the password provided by the respondent, Taradash accessed the IOLA account to conduct online transactions. The respondent admits that from in or about September 2012 through March 2013, he did not review the records of his IOLA account. In fact, the respondent claims that at some point he was unable to access his accounts online, and that he did not review the bank statements sent by mail to the Brooklyn office.

### The Nyrell O. Pack Matter

In or about April 2012, the respondent was retained by Nyrell O. Pack in connection with a personal injury matter. Taradash conducted the initial intake interview, without the respondent's

participation. The respondent authorized Taradash to communicate with the insurance carrier, signing his own name, and to conduct settlement negotiations on behalf of Pack, without the respondent's participation. A settlement on behalf of Pack was reached in or about August 2012. In furtherance thereof, the insurance carrier issued a check, dated August 24, 2012, in the amount of $25,000 (hereinafter the Pack settlement check), made payable to Nyrell O. Pack and Castelli Law Group, as attorneys.

On August 31, 2012, the Pack settlement check was deposited in the IOLA account. After this deposit, the balance in the IOLA account was $25,000. Nearly four months thereafter, on or about December 26, 2012, Taradash issued check No. 1021 from the IOLA account in the amount of $16,100.81, and made payable to Nyrell O. Pack, reflecting Pack's share of the settlement proceeds. Taradash utilized the respondent's signature stamp to endorse check No. 1021, which was presented for payment on January 7, 2013. However, inasmuch as the balance in the IOLA account was $0 when check No. 1021 was presented, it was dishonored on January 8, 2013, due to insufficient funds in the account. The respondent was not aware, until on or about January 14, 2013, that Pack did not receive her portion of the settlement funds. At or about that time, the respondent provided Pack with a bank check for the funds she was due. Notwithstanding the discovery of the discrepancy in the IOLA account, the respondent neither removed Taradash's access to the account nor retrieved the signature stamp from him.

### The Viktor Loginov Matter

On or about May 1, 2012, the respondent was retained by Viktor Loginov in connection with a personal injury matter. Taradash prepared a summons and complaint, using the respondent's signature stamp on the pleadings. Without the respondent's participation, Taradash conducted settlement negotiations with the insurance carrier on behalf of Loginov.

Unbeknownst to the respondent, in or about February 2013, a settlement was reached in the amount of $90,000, and Loginov signed a general release on or about February 5, 2013. The respondent did not discuss the settlement with Loginov or Taradash. A settlement check dated February 11, 2013, was issued by the insurance carrier in the amount of $90,000, payable to Viktor Loginov and Castelli Law Group, PLLC, as at-

torneys (hereinafter the Loginov settlement check). Following the deposit of the Loginov settlement check on February 13, 2013, the balance in the respondent's IOLA account was $93,033.49. The next day, on February 14, 2013, $30,880.38 was transferred from the respondent's IOLA account to the respondent's Sovereign business account, representing a payment of the respondent's legal fees and disbursements.

Between February 13, 2013 and March 1, 2013, there were no disbursements to Loginov. Accordingly, as of March 1, 2013, the respondent should have maintained, at a minimum, $59,119.62 in his IOLA account. However, the balance was only $52,802.57 on that day. On or about May 2, 2013, the respondent learned that Loginov had not received any settlement funds. At the time of the hearing in this matter, Loginov had received a partial reimbursement from the respondent.

### The Yelena Natenadze Matter

In or about November 2012, the respondent represented Yelena Natenadze in connection with a personal injury matter. Without the respondent's participation, Taradash conducted settlement negotiations on behalf of Natenadze. A settlement was reached, and the insurance carrier issued a check dated November 29, 2012, in the amount of $35,000, made payable to Yelena Natenadze and Castelli Law Group, as attorneys (hereinafter the Natenadze settlement check). Following the deposit of the Natenadze settlement check, on or about November 30, 2012, the balance in the IOLA account was $35,000. Between November 30, 2012 and December 31, 2012, no disbursements were made from the IOLA account in connection with the Natenadze matter. Accordingly, as of December 31, 2012, the respondent should have maintained, at a minimum, a balance of $35,000 in his IOLA account. However, the balance was $0. At the time of the hearing in this matter, Natenadze had received a partial reimbursement from the respondent.

Based upon the foregoing, charge one alleges that the respondent misappropriated funds belonging to other persons, entrusted to him as a fiduciary, for a use other than for which they were intended, in violation of rule 1.15 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0). Charge two alleges that the respondent aided a nonlawyer in the unauthorized practice of law, in violation of rule 5.5 (b) of the Rules of Professional Conduct (22 NYCRR 1200.0). Charge three alleges that the respondent failed to adequately supervise the work of a

nonlawyer in his firm, in violation of rule 5.3 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0). Charge four alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of rule 8.4 (h) of the Rules of Professional Conduct (22 NYCRR 1200.0).

The Special Referee found that, despite the respondent's claim that he told Taradash that he could not hold himself out as a lawyer, issue settlement checks without approval, or retain clients without consulting the respondent, the evidence clearly established that Taradash disregarded all of the respondent's instructions with impunity. Notably, the Special Referee concluded that it was "Taradash that had relationships with the clients . . . and Taradash treated them as if he were their lawyer." As a direct result of the respondent's minimal interaction with his clients, and the broad delegation of the banking duties he gave to Taradash, the respondent enabled the misappropriation of client's funds by Taradash.

In January 2013, once the respondent discovered the deficiency in the IOLA account relating to Pack, he failed to immediately conduct a scrupulous examination of all bank accounts. If he had done so, the respondent would have prevented the misappropriation of the Loginov and Natenadze settlement proceeds. Moreover, the respondent failed to remove Taradash's access to the account, and to retrieve his signature stamp. Indeed, the respondent allowed Taradash to continue to run the Brooklyn office "without consequences for the violation of his trust," and thus, the Special Referee found that he "acquiesced in the malfeasance."

Under the totality of the circumstances, the Special Referee sustained charges two, three and four, finding the respondent failed to supervise a nonlawyer in his firm and aided a nonlawyer in the unauthorized practice of law, which conduct adversely reflects on his fitness as a lawyer. By seeking to affirm the findings of the Special Referee, the respondent joins in the petitioner's motion to confirm with respect to these charges.

Concerning charge one, as adduced by the evidence, as well as the respondent's admissions, it is undisputed that clients' funds were misappropriated while entrusted to the respondent. The Special Referee found, and the respondent's counsel contends, that charge one cannot be sustained because the respondent did not take the funds. Under rule 1.15 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0), a lawyer who receives funds from another incident to the practice of law

is a fiduciary, with the attendant higher standard of care in handling those funds. "A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior" (*Matter of Galasso*, 19 NY3d 688, 694 [2012] [internal quotation marks omitted]). Indeed, the respondent owes "his clients a high degree of vigilance to ensure that the funds they had entrusted to him in his fiduciary capacity were returned to them upon request" (*id.*). "That respondent has acted without venality can be a factor considered in mitigation, but is not probative of whether he has failed to preserve client funds" (*id.*). Further, rule 1.15 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0) is violated notwithstanding the fact that the misappropriation was carried out by someone other than the attorney (*see Matter of Kalathara*, 123 AD3d 81 [2014]; *Matter of Shtindler*, 106 AD3d 173 [2013]). Accordingly, the Grievance Committee's motion to confirm in part, and disaffirm in part, the report of the Special Referee is granted.

We find that the respondent relinquished an unacceptable level of control over the firm accounts, which created the opportunity for the nonlawyer to steal client funds, and he ignored warning signs that would have mitigated the total loss. The respondent blindly trusted Taradash, authorizing him to conduct banking transactions, without proper supervision. When the respondent discovered the first misappropriation, not just a discrepancy in the account, he ensured the client was reimbursed, but he did not review the IOLA account, retrieve the signature stamp, or remove Taradash's online access. Had the respondent simply looked at his account, he would have discovered the defalcations, and most assuredly, he would have been in a position to prevent further misappropriations. Additionally, notwithstanding Taradash's experience as a paralegal, he was not an attorney licensed to practice law in New York, and the respondent permitted him to handle client legal matters with great autonomy. As such, the respondent aided a nonlawyer in the unauthorized practice of law.

The respondent urges this Court to impose a sanction no greater than a censure in light of his dire financial circumstances occasioned by the dissolution of his law partnership and his ongoing "hostile" divorce, the lack of financial gain from the misappropriations, his expression of remorse, the efforts he has made at restitution, the character evidence, as well as the absence of a prior disciplinary record. Nevertheless,

the respondent, who had been practicing law for more than 21 years at the time of the underlying events, has engaged in serious misconduct by permitting a nonlawyer to practice law under his firm name, and by abdicating his responsibility as a fiduciary to safeguard client funds with his delegation of the banking responsibilities to his paralegal without vigilant oversight.

Under the totality of the circumstances, we find that the respondent's conduct warrants his suspension from the practice of law for a period of three years.

ENG, P.J., MASTRO, RIVERA, SKELOS and DILLON, JJ., concur.

Ordered that the petitioner's motion to confirm in part, and disaffirm in part, the Special Referee's report is granted; and it is further,

Ordered that the respondent, James D. Castelli, admitted as James E. Daguanno, is suspended from the practice of law for a period of three years, commencing July 31, 2015, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than January 31, 2018. In such application, the respondent shall furnish satisfactory proof that during said period he: (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c) (2), and (4) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, James D. Castelli, admitted as James E. Daguanno, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, James D. Castelli, admitted as James E. Daguanno, an attorney, has been issued a secure pass by the Office of Court Administration, it shall be returned

forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).