Matter of Thomas (2022 NY Slip Op 06251)

Matter of Thomas

2022 NY Slip Op 06251

Decided on November 9, 2022

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 9, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
FRANCESCA E. CONNOLLY, JJ.

2018-11989

[*1]In the Matter of Audrey A. Thomas, admitted as Audrey A. Watson, an attorney and counselor-at-law. Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, petitioner; Audrey A. Thomas, respondent. (Attorney Registration No. 4050548)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts. The Grievance Committee commenced a disciplinary proceeding pursuant to 22 NYCRR 1240.8 against the respondent by serving and filing a notice of petition and a verified petition, both dated October 9, 2018, and the respondent served and filed an answer dated December 6, 2018. Subsequently, the Grievance Committee submitted a statement of disputed and undisputed facts dated January 3, 2019, which the respondent did not challenge. By decision and order on application of this Court dated March 1, 2019, the matter was referred to Roger Bennet Adler, as Special Referee, to hear and report. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on September 18, 2002, under the name Audrey A. Watson.

Diana Maxfield Kearse, Brooklyn, NY, for petitioner.
The Law Offices of Wynton Sharpe, P.C., Brooklyn, NY, for respondent.

PER CURIAM.

OPINION & ORDER
The Grievance Committee served the respondent with a verified petition dated October 9, 2018, containing three charges of professional misconduct. The respondent served and filed an answer dated December 6, 2018. Subsequently, the Grievance Committee submitted a statement of disputed and undisputed facts dated January 3, 2019, which the respondent did not challenge. By decision and order on application of this Court dated March 1, 2019, the matter was referred to Roger Bennet Adler, as Special Referee, to hear and report. Following a prehearing conference held on March 27, 2019, and a hearing spanning 15 separate dates between July 12, 2019, and December 10, 2020, the Special Referee filed a report dated April 21, 2021, in which he sustained all three charges. The Grievance Committee now moves to confirm the Special Referee's report and impose such discipline upon the respondent as the Court deems just and proper. The respondent moves to disaffirm the Special Referee's report and requests that this matter be remitted for further proceedings before a newly appointed Special Referee, or alternatively, that she be granted leave to supplement the record, or in view of the mitigating circumstances presented, a sanction no greater than a public censure be imposed.
The Petition
Charge one alleges that the respondent misappropriated funds entrusted to her as a [*2]fiduciary incident to her practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0) as follows:
The respondent was retained by Rhea Murray to represent her in the sale of real property located at 456 Madison Street, Brooklyn (hereinafter the Madison Street property). On May 15, 2013, the respondent deposited a down payment in the amount of $50,000, received from the buyer of the Madison Street property, into an IOLA account that she maintained at Bank of America, account number ending in 5589, entitled, "New York IOLA Trust Accounts Audrey A. Thomas Atty at Law Trtee" (hereinafter the BOA escrow account). The balance in the BOA escrow account before the deposit of the down payment was $25, which was the respondent's personal funds.
Pursuant to a rider to the contract of sale, the buyer authorized the release of $25,000 from the down payment to Murray, and $4,500 to the respondent to commence and finalize eviction proceedings against tenants of the Madison Street property. On May 23, 2013, the respondent withdrew the sum of $29,500 from the BOA escrow account. From the $29,500 withdrawn, the respondent paid Murray the sum of $23,000 via a cashier's check from Bank of America, and she kept $6,500 ($2,000 more than what was authorized in the rider).
Before the closing, the respondent made four cash withdrawals from the BOA escrow account in June 2013, totaling $20,500. As a result of those cash withdrawals, by the close of business on June 21, 2013, the BOA escrow account balance was $25, well below the $20,500 she was required to hold for this transaction.
At the closing on November 21, 2013, the respondent received a check for a portion of the sale proceeds of the Madison Street property from Seyfarth Shaw, LLP, in the amount of $480,173.47. On November 22, 2013, the respondent deposited that check into the BOA escrow account. The balance in the BOA escrow account after this deposit was $480,198.47.
Between November 22, 2013, and February 11, 2014, the respondent disbursed the sum of $102,413.94 from the BOA escrow account at the direction of Murray. During that same period, without Murray's authorization or knowledge, the respondent withdrew $85,340.10 of Murray's funds, as evidenced by the BOA escrow account bank statements.
On February 11, 2014, the respondent deposited a check for the balance of the sale proceeds of the Madison Street property from Seyfarth Shaw, LLP, in the amount of $240,000, bringing the balance in the BOA escrow account to $532,444.43.
Between February 11, 2014, and May 8, 2014, the respondent disbursed the sum of $3,620.91 from the BOA escrow account at the direction of Murray. During that same period, without Murray's authorization or knowledge, the respondent withdrew $271,181.13 (including several cash withdrawals) of Murray's funds, as evidenced by the BOA escrow account bank statements.
On May 8, 2014, the respondent closed the BOA escrow account and withdrew the balance of the Murray funds ($257,642.39) by certified check, and the next day she deposited those funds into an account at JPMorgan Chase Bank, account number ending in 1013, entitled, "Law Office of Audrey Thomas, PLLC Attorney Trust Account IOLA" (hereinafter the Chase escrow account). The Chase escrow account had a zero balance before the $257,642.39 deposit. Between May 9, 2014, and November 17, 2014, the respondent disbursed the sum of $3,620.91 from the Chase escrow account at the direction of Murray. During that same period, the respondent disbursed the sum of $253,996.48 from the Chase escrow account via electronic transfers, cash withdrawals, and checks payable to herself and various individuals and companies, without Murray's authorization or knowledge. By November 17, 2014, the balance in the Chase escrow account was $25, well below the amount the respondent should have been holding on behalf of Murray.
Charge two alleges that the respondent made 12 improper cash withdrawals from the BOA escrow account between June 7, 2013, and May 8, 2014, totaling $64,000, in violation of rule 1.15(e) of the Rules of Professional Conduct (22 NYCRR 1200.0).
Charge three alleges that the respondent failed to maintain the required bookkeeping records for the BOA escrow account and the Chase escrow account, in violation of rule 1.15(d) of the Rules of Professional Conduct (22 NYCRR 1200.0) as follows: The respondent failed to maintain a contemporaneous ledger or similar record showing the date, source, and description of each item deposited, and the date, payee, and purpose of each withdrawal or disbursement for both escrow accounts.
Hearing Evidence
The respondent has admitted that she represented Murray in the sale of the Madison [*3]Street property, and that she received the proceeds of that sale. The respondent's escrow bank records confirm that she deposited the proceeds of the Madison Street property sale, in the approximate amount of $770,000, into her escrow account. Although the respondent disbursed some of the sale proceeds at the direction of Murray, the respondent's escrow bank records confirm that the remaining funds in excess of $630,000 did not remain on deposit in the respondent's escrow account. The respondent concedes that she used Murray's escrow funds to promote the respondent as an author and radio show host. The respondent claims that such use of the escrow funds was authorized by Murray, with whom she had a longstanding personal relationship, as an investment and to reimburse the respondent for legal services she claims to have rendered to Murray's family members. Breanna Rochelle Coy, the respondent's daughter, testified that she recalled the respondent getting oral authorization from Murray to use Murray's funds. As to the purported investment transaction, the respondent admits that she did not follow the ethical rules relating to engaging in financial transactions with a client, and did not reduce the authorization to a written document.
In her testimony during the hearing, Murray denied ever giving the respondent authorization to use the proceeds from the Madison Street property sale as an investment or to pay for her family's legal bills purportedly owed to the respondent. Murray testified that, before the closing of the Madison Street property, she informed the respondent that she wanted the proceeds from the sale to be distributed to pay down existing mortgages on several properties located in Brooklyn, namely (1) a 196 Buffalo Avenue property that she owned; (2) a 642 East 96th Street property that her daughter Blueth Ogunnoiki owned; and (3) a 1649 Prospect Place property that her daughter Anthia Murray owned. According to Murray, the respondent was supposed to obtain the balance on each of the mortgages for those three properties. The respondent did not carry out Murray's instructions, and the mortgages on the above three properties were not paid. Murray testified that after the closing in November 2013, the respondent never personally explained to her what had happened to her funds.
Murray's daughters, Blueth Ogunnoiki and Anthia Murray, testified that, in September 2016, they met with the respondent to discuss the whereabouts of their mother's money. During that meeting, the respondent confessed to them that she invested their mother's money in her own name. The respondent urged them not to pursue the matter further. The respondent advanced the possibility of a payment plan and promised to pay the money back. Anthia Murray testified that the respondent's payments started on April 3, 2017, and ended on September 11, 2017, totaling $31,300. At the time of the hearing, Murray had not received any more funds from the respondent.
Findings and Conclusion
We find no merit to the respondent's claims in support of her request to remit the matter for further proceedings or for leave to supplement the record. Here, the respondent received substantial funds from the sale of the Madison Street property, which she deposited into her escrow account. While the respondent claims that she was authorized to use those funds, Murray testified that she did not authorize the respondent to use the proceeds from the Madison Street property sale for an investment or to pay for her family's legal bills purportedly owed to the respondent. The Special Referee found the testimony of the Grievance Committee's witnesses "to possess the indicia of truth, and reflect[ ] [a] client[ ] whose trust was betrayed," and we agree with this finding. Based upon our review of the record, we conclude that the charges are supported by a preponderance of the credible evidence (see 22 NYCRR 1240.8[b][1]; Matter of Capoccia, 59 NY2d 549). Under rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), a lawyer who receives funds from another incident to the practice of law is a fiduciary, with the attendant higher standard of care in handling those funds. "A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior" (Matter of Galasso, 19 NY3d 688, 694 [internal quotation marks omitted]). We find that the respondent failed to honor her obligations as a fiduciary and misappropriated substantial funds entrusted to her in the Madison Street property sale.
Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted, and the respondent's motion, inter alia, to disaffirm the Special Referee's report is denied.
In determining an appropriate measure of discipline to impose, the Court has considered, in aggravation, that the respondent misappropriated substantial funds from her client, a senior citizen; that she has failed to make full restitution to her client; the respondent's lack of [*4]remorse and acceptance of responsibility; and her disciplinary history, which consists of an admonition. In mitigation, the Court has considered the respondent's character evidence and charitable and community activities.
Under the totality of the circumstances, we conclude that the respondent's conduct warrants her disbarment.
LASALLE, P.J., DILLON, DUFFY, BARROS and CONNOLLY, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted, and the respondent's motion, inter alia, to disaffirm the Special Referee's report is denied; and it is further,
ORDERED that pursuant to Judiciary Law § 90, effective immediately, the respondent, Audrey A. Thomas, admitted as Audrey A. Watson, is disbarred, and her name is stricken from the roll of attorneys and counselors-at-law; and it is further,
ORDERED that the respondent, Audrey A. Thomas, admitted as Audrey A. Watson, shall promptly comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, effective immediately, the respondent, Audrey A. Thomas, admitted as Audrey A. Watson, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding herself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Audrey A. Thomas, admitted as Audrey A. Watson, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in her affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Maria T. Fasulo
Clerk of the Court