In the Matter of the Estate of DANIEL M. EDWARDS, Deceased. DOROTHY E. SLOCUM et al., Appellants; JAMES H. SLOCUM, as Trustee under the Will of DANIEL M. EDWARDS, Deceased, Respondent.

Fourth Department, July 8, 1948.

*Byron A. Johnson, Sr.,* for appellants.

*Benjamin E. Shove* for respondent.

LARKIN, J. Petitioners appeal from an order of the Surrogate of Onondaga County dismissing the entire so-called first cause of action and certain allegations of the so-called third and fourth causes of action, which alleged therein, by reference, allegations of the first, all contained in a petition seeking the removal of respondent as one of the four trustees of a testamentary trust created by the will of Daniel M. Edwards.

The will was executed June 19, 1928. Testator died a resident of Onondaga County, May 29, 1929. Outside of a small bequest of furniture, automobiles, and jewelry, decedent gave by his will, all of his estate to four executors and trustees named therein to hold the same in trust for the members of his family, paying the income for life to his widow and children as directed by the will, with the next of kin of his children as the ultimate remaindermen. At his death, testator left his widow and four children surviving. Three of the four children are now living,

and this proceeding was begun by two of them, Dorothy E. Slocum, and Mary E. Rodormer, and their children, thus representing two thirds of the beneficial interest in the entire trust estate.

The principal assets of the estate consist of shares of stock in two corporations. The testator, through ownership of all, or substantially all, of the stock of the E. W. Edwards & Son Corporation and the Murray Realty Corporation, operated three large department stores, one in each of the cities, Syracuse, Buffalo and Rochester. The Murray Realty Company owned the greater part of the real estate which the Edwards Corporation used in the transaction of its entire merchandising business. As authorized by the will the trustees have retained his stock and now control the directorate of the two corporations by virtue of it. Therefore, the trustees now control the policy of each corporation by their power to elect directors competent to formulate the policy or to carry out the policy formulated by the trustees.

At the time the will was drawn the respondent was the husband of the petitioner Dorothy E. Slocum, daughter of the testator. He was a director of the Edwards Corporation, and associated with the Rochester store, living in Pittsford, close to Rochester, with his wife and children. In paragraph " Eleventh " of his will, which named the trustees, testator designated " my son-in-law James A. Slocum " as a trustee. Following the death of testator, respondent was made manager of the Rochester store and a vice-president of the corporation.

Apparently the matrimonial life of the Slocums was harmonious for a number of years, but domestic difficulties caused them to separate on or about January 1, 1944. Mrs. Slocum continued to live with her children in Pittsford, but respondent took up residence at a hotel in Rochester.

On February 7, 1944, Slocum, by action of the board of directors of the Edwards Corporation, ceased to be manager of the Rochester store. On the same day he ceased to be a director and vice-president of the corporation. Caroline W. Edwards, widow of the testator, was then one of the trustees of the Daniel Edwards estate. She died in 1945.

In substance, the allegations of the first so-called cause of action are: On December 18, 1944, Mrs. Slocum obtained in Nevada a decree of divorce from respondent, who in April, 1946, remarried and now resides in the State of California where he is engaged in business. Respondent, after the divorce and before his remarriage, made oral and written representations to

his former wife, expressing regret and repentance for his conduct which had resulted in the separation and divorce. He assured his wife that his misconduct had ended. She believed him and convinced the other members of her family of his sincerity. As a result, her attitude and that of the others of her family, changed from one of resentment to one of friendliness. Petitioner, his former wife, believed respondent, when he told her that, he was, again, wholly devoted to her interests and those of his children. She persuaded the other members of her family that respondent's protestations were sincere. However, when the respondent married in April, 1946, the petitioners then knew for the first time that respondent had been insincere and deceitful with the result that ill-feeling again developed, aggravated by the deception. This ill-feeling has reached such a point that the relations between the petitioners and respondent are so strained that it is no longer possible for them to work in harmony with him as trustee because they have lost all confidence in his integrity and are hostile to him, and he in turn, is hostile to his former wife. Such a condition is detrimental to the proper execution of the trust by Slocum as one of the trustees.

Some of the allegations of the first are incorporated by reference into the third and fourth so-called causes of action.

It is unnecessary to go into detail as to the allegations of the so-called second, third and fourth causes of action. Again, stating generally, the second contains allegations that, by reason of respondent's residence and business activities in California, far removed from the area in which the essential part of the activities of the trust are conducted in the State of New York, he is no longer a suitable person to act as trustee, because he does not, and cannot, give proper attention to the administration of the trust, and is not available for consultation in reference to it, if the beneficiaries or the other trustees were minded to consult with him, except at added expense to the trust estate. The third pleads that respondent has personally filed and sought to collect unfounded claims from the trust estate. The fourth alleges that the relations between respondent and the other trustees are not harmonious, with the result that such lack of harmony interferes with the proper administration of said estate.

It is true that, normally, mere friction between a trustee and a beneficiary is not sufficient ground for removing a trustee, unless that friction interferes with the proper administration

of the trust. (1 Restatement of Trusts, § 107, comment C; 1 Scott on Trusts, § 107, p. 559.) Although there is no specific allegation in this so-called first cause of action of any harmful result to the trust from the existence of this hostility, still, there is a general allegation that the ill will is of such a nature that it is detrimental to the execution of the trust. Professor Scott in section 107 (Vol. 1, p. 559) recognizes that where the hostility between *cestui* and trustee seriously impedes the performance of the trust, especially if the trustee is at fault, the trustee may be removed. We are not called upon at this time to determine what would constitute an impairment of the execution of the trust.

These trustees holding the stock of the two corporations and directing their business policies are in a situation not ordinarily found in a trust estate. Practically the only income which will be distributed to the beneficiaries is that received from these two corporations, the directorate of which may be said to be under the absolute control of the trustees. These trustees are four in number. The ordinary rule is that trustees act collectively unless authorized by the instrument creating the trust to act otherwise. That would seem to be true as to these trustees except in the selection of a successor trustee when the remaining trustees elect by majority vote. Moreover, to compel these beneficiaries — surely as owners of two thirds of the trust they have such right — to consult with the respondent when such consultation might well be distressing to the petitioners is something which the testator could not have foreseen and had in mind when he named his then son-in-law as a trustee. On the contrary, it may be assumed that had he foreseen this situation he would not have done so. The following excerpt from the opinion in a somewhat analogous case *Selleck* v. *Hawley* (331 Mo. 1038, 1059), seems applicable to the instant situation. "Had the circumstances of the parties and their relations to each other, as revealed from the facts pleaded in the petition, been such at the time the testator executed his will as they stood when the amended petition was filed in this case the testator certainly would not have named the present trustees to administer the trust estate. The testator would not have placed the plaintiff in such an embarrassing position. We must presume that the testator intended the plaintiff to enjoy in its fullest extent the net income of the one-third share of the trust estate. Peace of mind is of more value in the enjoyment of life than property or money. The relations existing between the trustees and the plaintiff, as the *cestui que trust* in this case, as pleaded

in the petition, tend to destroy that peace of mind and defeat to a great extent the intention of the testator when he created the trust estate.'' The testator Daniel M. Edwards created this trust for the benefit of his widow, his children and his grandchildren, and not for that of his trustees. They are merely the agents to carry out his purpose.

It has been asserted that personal hostility between trustee and *cestuis* will justify the removal of the trustee where it appears that the personal hostility combines with other circumstances rendering the removal of the trustee essential to the interests of the beneficiaries and the due execution of the trust. (65 C. J., Trusts, § 451; *Laughlin* v. *Griswold,* 179 Wis. 56.) In the *Laughlin* case (*supra,* p. 59) the rule is stated as follows: '' While it is true that the mere fact that a quarrel exists between a *cestui que trustent* and the trustee is not ground for the removal of the latter, yet such fact in connection with other facts and circumstances may be taken into consideration in determining whether or not a trial court has abused its discretion in removing the trustee. In the case of a trust not coupled with any interest in the trustee, the welfare of the beneficiaries of the trust constitutes the chief matter for consideration.''

This modification of the general rule that mere personal illwill between a *cestui* and a trustee will not justify the latter's removal becomes especially applicable to the instant situation when the other so-called three causes of action are considered. If any one of them be established there could be little question but that such a finding would be a basis upon which, if the Surrogate so determined, the respondent could be removed. If then the Surrogate found that ill will existed between these beneficiaries and the respondent for which the latter, alone, was responsible, to the extent indicated by the first so-called cause of action, certainly he would weigh such a finding in connection with his other finding or findings in order to reach a determination whether he would remove the respondent as trustee. A finding that the first cause of action was sustained would at least, conceding that it would not alone be sufficient for a removal of respondent, be a factor which might influence the Surrogate to remove him if any of the other bases had been satisfactorily established.

For the foregoing reasons, we conclude that the order from which petitioners appeal should be modified, by eliminating therefrom so much of it as dismisses the first cause of action.

With the allegations of the first cause of action restored to the petition, we see no reason for changing the Surrogate's order striking from the third and fourth, certain allegations of the first, therein included by reference. This is a proceeding under the Surrogate's Court Act, and not an action. We view the petition as an entirety. The requirement of the Surrogate's Court Act is that the petition shall allege the facts justifying the relief demanded. Any allegations of the petition substantiated on the trial may be utilized in granting any relief which the Surrogate may determine the petitioners may be entitled to have accorded to them.

The order should be modified as herein indicated.

All concur. Present — TAYLOR, P. J., LARKIN, LOVE, VAUGHAN, and KIMBALL, JJ.

Order so far as appealed from modified on the law and facts by reversing so much of the order as dismisses the alleged " First " cause of action, and as so modified, affirmed, without costs of this appeal to any party.