■ In the Matter of the Trust Made by MERLE L. GILES. JONATHAN L. GILES, Appellant-Respondent; MARGARET BUCHANAN, Respondent-Appellant. HOLLY BUCHANAN et al., Respondents-Appellants. [902 NYS2d 717]—

1500

Cardona, P.J. (1) Cross appeals from an amended order of the Surrogate's Court of Schuyler County (Argetsinger, S.), entered April 3, 2008, which, among other things, dismissed petitioner's application, in a proceeding pursuant to SCPA 209 (6), to remove respondent as trustee, and (2) appeals from an order of said court, entered September 30, 2008, which, among other things, ordered that the trust's real property be sold as one parcel.

In 1990, decedent, Merle L. Giles, executed a declaration of trust whereby he created an inter vivos trust naming Margaret Buchanan, his daughter and respondent herein, as successor trustee, and his nine grandchildren as beneficiaries. Five of the beneficiaries are respondent's children, all of whom have appeared in this proceeding as interested parties (hereinafter the Buchanan beneficiaries). The four remaining beneficiaries are the children of respondent's deceased brother (hereinafter the Giles beneficiaries). Decedent assigned all of his assets to the trust, and also deeded to the trust a 52-acre mostly vacant parcel of land located on Seneca Lake in the Town of Hector, Schuyler County. In addition, decedent made a will naming respondent the executor and bequeathing his estate to the trust.

Shortly before his death in 1992, decedent executed an amendment, designated the first amendment to declaration of trust, which modified paragraph 3 of the declaration of trust. The *original* paragraph 3 provided: "Upon my death . . . my Successor Trustee is hereby directed forthwith to transfer the said trust estate and all right, title and interest in and to said trust estate unto the beneficiar(ies) named herein absolutely and thereby terminate this trust." The *amendment* to paragraph 3 provided: "Upon my death, I hereby direct my Successor Trustee to continue to hold my Trust Estate in Trust for the longest term provided by law after my death so that the [Seneca Lake] property located in Schuyler County . . . shall continue

to be used by my family members for so long a term as is permissible by law or until my Successor Trustee and all beneficiaries of the Trust are in agreement that it is in the best interest of the beneficiaries that the property be sold and the Trust terminated and disbursed according to the terms of the Trust. The Successor Trustee shall have the right to use income from other trust assets as well as the trust assets themselves to pay for the maintenance and upkeep and taxes and other expenses of said property."

Following decedent's memorial service in 1992, respondent met with the beneficiaries and gave each of them, among other things, a check for $5,000 drawn from the trust's assets and a letter from decedent, stating his wish that his heirs and their heirs enjoy the Seneca Lake property as a vacation spot for as long as possible. Approximately a year later, petitioner, who is one of the Giles beneficiaries, contacted respondent, accusing her of violating her fiduciary duties by failing to immediately dissolve the trust and distribute the assets to the beneficiaries. After conversations between respondent and petitioner, respondent issued each of the Giles beneficiaries a check for $40,000 from the trust assets, and issued each of the Buchanan beneficiaries stocks, bonds and cash totaling $40,000.

Thereafter, there was little contact between respondent and the Giles beneficiaries until the spring of 2005, when they began communicating about the possibility of selling the Seneca Lake property. The beneficiaries had made little use of the property over the intervening years. Meanwhile, the taxes, as well as the value of the property, had increased substantially, while the trust assets available to support the property had dwindled to about $15,000. Respondent polled all of the beneficiaries seeking their approval of a sale, but the Giles beneficiaries refused to consent. In November 2005, petitioner commenced this proceeding seeking, among other things, an order enjoining the sale of the Seneca Lake property, removing respondent as trustee, and compelling her to provide an accounting of the trust. Respondent answered and interposed a counterclaim seeking the permission of Surrogate's Court to sell the Seneca Lake property and distribute the trust assets to the beneficiaries, effectively dissolving the trust. Surrogate's Court then issued a probate citation to all of the beneficiaries.

In May 2006, Buchanan filed an interim accounting. A bench trial commenced, continuing intermittently until January 2007. The parties thereafter stipulated that the pleadings be deemed to include a petition for judicial settlement of the interim account and objections thereto.

In April 2008, Surrogate's Court issued an amended order which determined that petitioner's allegations of bad faith and dishonesty on respondent's part were not proven, but that some of the expenses claimed in her account were not authorized. The court also recognized that the trust assets were no longer sufficient to carry out the purpose of the trust. Accordingly, the court (1) denied petitioner's demand to remove respondent as trustee, (2) disallowed certain items in the account—totaling $46,100—and ordered respondent to reimburse the trust and serve an amended account, (3) settled the interim account as modified above, (4) ordered that all parties' counsel fees be paid out of the trust assets, and (5) ordered that within 60 days the parties submit either a stipulated plan, or each party's recommended plan, for the sale, partition or other disposition of the Seneca Lake property. Petitioner, respondent, and the Buchanan beneficiaries cross-appeal from that amended order.

The parties were unable to stipulate to a plan for the Seneca Lake property within the allotted time. Consequently, in September 2008, Surrogate's Court ordered, among other things, that the Seneca Lake property be sold in one parcel with the Giles beneficiaries having 60 days after determination of a price within which to exercise an option to buy it, and, if they chose to exercise said option, two years within which to complete the purchase. The court further ordered that if the Giles beneficiaries failed to exercise the option or to complete the purchase within the set times, the trustee must sell the property for the best price obtainable and thereafter file and settle an amended account. Petitioner and the Buchanan beneficiaries appeal from the September 2008 order.* The appeals from both orders have been joined.

Initially, petitioner contends on appeal that, because the declaration of trust stated that it "shall be governed and construed at all times according to the laws of the State of Florida," Florida law must be applied herein. However, petitioner did not raise this argument at Surrogate's Court and, indeed, by alleging in his petition that "[t]he trustee is not meeting the duties imposed upon her by the laws of the State of New York," he indicated his intention to pursue his claims under New York law. Moreover, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved" (*Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.]*, 81

---

* In May 2009, Surrogate's Court denied petitioner's motion to stay the September 2008 order pending appeal and ordered the parties to obtain an appraisal of the Seneca Lake property within four weeks.

NY2d 219, 223 [1993]). Here, petitioner had the burden of proving at trial that the applicable substantive law of Florida is different from New York law (see *Knieriemen v Bache Halsey Stuart Shields*, 74 AD2d 290, 296 [1980], *appeals dismissed* 50 NY2d 1021, 1059 [1980], 51 NY2d 970 [1980]). "In the absence of this proof we may assume that it is the same, or, at least, that [petitioner] has acquiesced in the application of the law of the forum" (*id.* [internal citation omitted]).

Turning to the merits, we note that a "trustee owes the beneficiar[ies] an undivided duty of loyalty" (*Mercury Bay Boating Club v San Diego Yacht Club*, 76 NY2d 256, 270 [1990]) and "a duty to act with the utmost good faith in the administration of [the] trust" (*Matter of Myers*, 45 AD3d 955, 957 [2007]). "[R]emoval of a trustee is a drastic action not to be undertaken absent a clear necessity" (*Matter of Rose BB.*, 243 AD2d 999, 1000 [1997]), and an individual seeking removal bears the burden of demonstrating that the trustee has violated or threatens to violate his or her trust or is otherwise unsuitable to execute the trust (see SCPA 711 [11]; EPTL 7-2.6 [a] [2]).

Here, petitioner's allegations of bad faith and dishonesty center in large part upon his contention that respondent improperly and without authority depleted the trust by distributing $40,000 to each beneficiary in 1993, leaving insufficient trust assets to support and maintain the Seneca Lake property. Petitioner asserts that he would not have agreed to that distribution had he been aware of the first amendment to the declaration of trust which, he claims, respondent improperly withheld from the beneficiaries. Respondent argues that the declaration of trust authorized her to make distributions of trust assets, and that petitioner was fully informed of decedent's wishes with respect to the Seneca Lake property when he consented to the 1993 distribution.

Exercising our broad authority in a nonjury trial to independently weigh the evidence and render a determination warranted by the record (see *Matter of Breistol*, 64 AD3d 1122, 1122-1123 [2009]; *Matter of Saxton*, 274 AD2d 110, 118 [2000]), we find that respondent was authorized to make the distributions at issue. Paragraph 15 (h) of the declaration of trust unambiguously empowered the trustee "[t]o make distributions in cash or in kind," and the first amendment did not divest the trustee of that authority. Given the lack of ambiguity, we need look no further to determine decedent's intent in that regard (see *Matter of Manning v Glens Falls Natl. Bank & Trust Co.*, 265 AD2d 743, 744 [1999]).

Furthermore, petitioner failed to prove at trial that it would

have been apparent to the trustee at the time of the distributions that the remaining trust assets would eventually prove inadequate to maintain the Seneca Lake property. Indeed, those assets were sufficient for that purpose for 12 years and, although the parties appear to generally agree that this would not be desirable, it is not disputed that the property could continue to be maintained for some years to come, albeit in a reduced form, if portions were sold to fund the taxes and upkeep on the remaining land.

With respect to petitioner's contention that he and the other Giles beneficiaries were misled about decedent's intentions regarding the Seneca Lake property, we agree with Surrogate's Court's finding that petitioner was fully aware that the purpose of the trust was to maintain that property for the beneficiaries' use. Decedent's letter to the beneficiaries, which petitioner admits receiving before the $40,000 distributions were made in 1993, clearly outlined decedent's wishes in that regard. To the extent that petitioner denies fully understanding the implications of the distributions at that time, we defer to the trial court's credibility determinations given that court's ability to observe the witnesses' demeanor during testimony (*see Kallman v Krupnick*, 67 AD3d 1093, 1094-1095 [2009], *lv denied* 14 NY3d 703 [2010]; *Matter of Breistol*, 64 AD3d at 1123; *Matter of Saxton*, 274 AD2d at 118). On the same basis, we also defer to the court's implicit rejection of petitioner's claim that respondent deliberately concealed the first amendment from the beneficiaries because she sought to deplete, and thereby destroy, the trust. Petitioner's further allegations of bad faith and dishonesty were also unproven.

With respect to the disposition of the Seneca Lake property, given decedent's well-documented wish that the property remain in the family for as long as possible, we do not agree with the Buchanan beneficiaries' contention that Surrogate's Court abused its discretion in granting the Giles beneficiaries an option to purchase the property. As to petitioner's contention that instead of ordering the sale of the property, Surrogate's Court should have left the trust intact and permitted the Giles beneficiaries to purchase the Buchanan beneficiaries' beneficial interests in the trust, we note that petitioner did not seek this relief in Surrogate's Court, nor did he present any evidence as to whether such a transaction would be viable, or even permissible.

Finally, given that this proceeding did result in certain disallowances, which we find to be supported by the record, we are not persuaded that Surrogate's Court abused its discretion in

directing payment of petitioner's reasonable counsel fees from the trust assets (*see* SCPA 2110 [1], [2]; *Matter of Hyde*, 61 AD3d 1018, 1019 [2009]; *Matter of Guattery*, 278 AD2d 738, 739 [2000]; *Matter of Coughlin*, 221 AD2d 676, 677 [1995]). The parties' remaining contentions have been considered and found to be unavailing.

Mercure, Peters, Kavanagh and Garry, JJ., concur. Ordered that the amended order and order are affirmed, without costs.