Matter of Moran (2018 NY Slip Op 07500)





Matter of Moran


2018 NY Slip Op 07500


Decided on November 8, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 8, 2018

525815

[*1]In the Matter of the JOAN MORAN TRUST. WILLIAM M. MORAN, as Cotrustee of the JOAN MORAN TRUST, Appellant; DANNY P. MORAN, as Cotrustee of the JOAN MORAN TRUST, Respondent.

Calendar Date: September 6, 2018

Before: Garry, P.J., Egan Jr., Mulvey, Aarons and Pritzker, JJ.


Martin, Shudt, Wallace, DiLorenzo & Johnson, Troy (Robert L. Adams of counsel), for appellant.
McNamee Lochner PC, Albany (Francis J. Smith of counsel), for respondent.



MEMORANDUM AND ORDER
Egan Jr., J.
Appeal from an order of the Surrogate's Court of Albany County (Pettit, S.), entered July 20, 2017, which, among other things, in a proceeding pursuant to SCPA article 21, granted respondent's cross motion for partial summary judgment.
In June 1990, respondent created a trust agreement for the benefit of his mother, Joan Moran, naming himself and petitioner, his brother, as both cotrustees and beneficiaries under the trust. Pursuant to the trust agreement, the trustees were required to, among other things, distribute, in their discretion, the net income or principal of the trust in whatever amount deemed necessary to maintain Moran's standard of living "[f]or so long as [Moran] resides elsewhere than at a skilled nursing facility, nursing home, or other residential care facility" or until Moran's death, whichever occurred first. Upon termination of the trust, the corpus of the trust and any income derived therefrom was to be distributed equally between petitioner and respondent.[FN1]
In June 2010, Moran was admitted to Colonie Manor, a private proprietary adult home, which was intended to be her permanent residence. In November 2010, Moran fell and sustained an injury and was admitted to the hospital for treatment. Following treatment, Manor was transferred to the Daughters of Sarah Nursing Center, a skilled nursing facility, to undergo rehabilitation. In February 2011, it was ultimately determined that Moran would be discharged [*2]from the Daughters of Sarah to return to her residence in the City of Albany and, as a result, she was officially discharged as a resident of Colonie Manor as of March 1, 2011.
In March 2013, petitioner commenced this proceeding, seeking, among other things, a declaration that the trust had been terminated upon Moran's admission to Colonie Manor or the Daughters of Sarah and an order directing respondent to provide an accounting for the trust assets and to distribute to petitioner his share of same, together with costs, counsel fees and interest. In the event that respondent failed to provide such an accounting, petitioner alternatively requested that respondent be removed as cotrustee. Respondent thereafter filed an accounting for the period dated January 31, 2010 through April 30, 2013. Following joinder of issue and discovery, petitioner then moved for partial summary judgment, seeking, among other things, removal of respondent as cotrustee and for the substitution of an institutional trustee based upon respondent's breach of his fiduciary duty to invest and manage the trust's assets. Respondent opposed the motion and cross-moved for partial summary judgment, dismissing so much of the petition as sought termination of the trust based upon Moran's admission to Colonie Manor or the Daughters of Sarah. By order dated July 2017, Surrogate's Court, among other things, denied petitioner's motion for summary judgment seeking removal of respondent as cotrustee and granted respondent's cross motion dismissing petitioner's claim seeking termination of the trust based upon Moran's admission to Colonie Manor or the Daughters of Sarah. Petitioner appeals.[FN2]
Petitioner contends that Surrogate's Court erred when it determined that the trust agreement did not terminate upon Moran's admission to either Colonie Manor or the Daughters of Sarah. We disagree. It is well settled that a trust agreement is "to be construed as written and the [grantor's] intention determined solely from the unambiguous language of the instrument itself" (Matter of Wallens, 9 NY3d 117, 122 [2007] [internal quotation marks and citations omitted]; see Matter of Terranova, 59 AD3d 453, 455 [2009]). The subject trust agreement unambiguously provides that respondent, as grantor, created the trust for the benefit of Moran as an estate and tax planning device to protect her assets in the event that she later required long-term care in a medical facility for which Medicare or Medicaid would provide assistance [FN3]. In turn, and as relevant here, the trust agreement specifically provides that the subject trust would terminate "[u]pon the admission of, or the continued care of [Moran], as a permanent or chronic care resident or patient in a skilled nursing facility, nursing home, or other residential care facility." Contrary to petitioner's assertion, although defendant was admitted to Colonie Manor in June 2010 as a permanent resident, the evidence submitted in support of respondent's cross motion demonstrates that Colonie Manor did not qualify as "a skilled nursing facility, nursing home, or other residential care facility" so as to trigger the trust's termination provision. In support of his cross motion, respondent submitted, among other things, the affidavit of Sandra McNary, the executive director of Colonie Manor. McNary testified that Colonie Manor was an "adult care facility" and was issued a license by the Department of Health to operate as a "private proprietary adult home" providing "basic services" pursuant to Social Services Law, including lodging, housekeeping, personal care and supervision services. McNary indicated that Colonie [*3]Manor provides its residents with "minimal assistance" and that it does not provide for full-time, 24/7 nursing staff that is otherwise required to qualify as a skilled nursing facility.
Further, with regard to Moran's admission to the Daughters of Sarah, we agree with Surrogate's Court that, although the Daughters of Sarah qualified as a "skilled nursing facility, nursing home, or other residential care facility," the evidence submitted established that Moran was never admitted as a "permanent or chronic care patient" as contemplated by the trust's termination provision and, instead, was admitted for short-term rehabilitation only. Respondent, meanwhile, submitted his own affidavit indicating that it was never his intention, as grantor, for the trust to be terminated as a result of a short-term rehabilitative stay at a skilled nursing facility. Accordingly, based on the foregoing, we find that Surrogate's Court properly denied petitioner's motion for partial summary judgment as neither Moran's admission to Colonie Manor nor the Daughters of Sarah triggered the termination of the trust.
We similarly find no error in Surrogate's Court's denial of petitioner's motion seeking to remove respondent as cotrustee. "[A]n individual seeking removal [of a trustee] bears the burden of demonstrating that the trustee has violated or threatens to violate his or her trust or is otherwise unsuitable to execute the trust" (Matter of Giles, 74 AD3d 1499, 1503 [2010]; see SCPA 711 [11]; EPTL 7-2.6 [a] [2]). Removal of a fiduciary is appropriate where it is established that the fiduciary "does not possess the qualifications required of a fiduciary by reason of . . . dishonesty, improvidence, want of understanding, or who is otherwise unfit for the execution of the office" (SCPA 711 [8]). Removal of a trustee, however, is a drastic action, and courts are generally hesitant to exercise the power to remove a fiduciary absent a clear necessity (see Matter of Giles, 74 AD3d at 1503; Matter of Collins, 36 AD3d 1191, 1193 [2007]; Matter of Rose BB., 243 AD2d 999, 1000 [1997]).
In support of his motion, petitioner submitted an attorney affidavit, the trust agreement and the transcript of respondent's deposition testimony. Petitioner avers that, inasmuch as respondent's deposition testimony demonstrates that respondent abdicated his responsibility to monitor and oversee the trust to a financial advisor, coupled with the adverse inferences to be drawn from his invocation of his Fifth Amendment privilege against self-incrimination in response to numerous questions posed to him at his deposition regarding his management of the trust, the evidence sufficiently established that removal of respondent as cotrustee was necessary. We disagree. Respondent testified at his deposition that the trust's assets are invested and managed by an investment firm, to which he readily acknowledged he afforded complete discretion and control. Although a wholesale abdication of oversight authority would not comport with his fiduciary obligations (see EPTL 11-2.3 [c] [1] [C]),[FN4] it was nevertheless within respondent's authority, as cotrustee, to delegate the investment and management function of the trust to a financial advisor (see EPTL 11-2.3 [c] [1] [A]). Moreover, "[n]ot every breach of fiduciary duty warrants removal" (Matter of Collins, 36 AD3d at 1193). Despite respondent's delegation of authority and admitted lack of oversight regarding how the trust's assets were being managed, petitioner failed to submit any evidence demonstrating that the trust assets suffered any financial harm as a result thereof. Further, although respondent admittedly did not monitor the trust's investment account, he ensured that the trust's bills were paid (i.e., taxes and legal fees), maintained all tax-related documentation for the trust, provided said documentation to Moran's accountant and signed the trust's yearly tax returns.
Additionally, while respondent invoked his Fifth Amendment privilege in response to certain questions regarding his management of the trust such that Surrogate's Court was permitted to draw a negative inference therefrom (see El-Dehdan v El-Dehdan, 26 NY3d 19, 37-38 [2015]), such fact did not relieve petitioner of the burden of submitting proof establishing that respondent engaged in serious misconduct as cotrustee that put the trust assets at risk (cf. Matter [*4]of Venner, 235 AD2d 805, 807 [1997]; Matter of Braloff, 3 AD2d 912, 913 [1957], affd 4 NY2d 847 [1958]). Other than petitioner's speculative assertions, there was no proof demonstrating that respondent exposed the trust to civil and criminal liability based upon the manner in which he managed same or that the purpose of the trust — i.e, providing for the care of Moran — was otherwise not being served. Accordingly, based on the foregoing, we find that Surrogate's Court appropriately denied petitioner's motion seeking removal of respondent as trustee, without prejudice to renewal of the motion in the context of the accounting proceeding, should an updated accounting reveal additional relevant facts with respect to respondent's conduct as cotrustee.
Garry, P.J., Mulvey, Aarons and Pritzker, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: Shortly after its creation, the trust was amended, deleting section 2 (e) of the agreement, which provided for an initial distribution to a third party who is not a party to this proceeding.

Footnote 2: Contrary to respondent's contention, Moran's death on January 20, 2018 did not render the instant appeal moot. Pursuant to the terms of the trust agreement, the trust was to terminate, and the corpus and income of the trust were to be distributed, upon either Moran's death or her admission "as a permanent or chronic care resident or patient in a skilled nursing facility, nursing home, or other residential care facility," whichever occurred first. Here, the determination of the issues raised on the present appeal will necessarily affect the parties' rights with respect to the amount that they are entitled to recover as beneficiaries of the trust, based upon the date that the trust is determined to have been terminated. Accordingly, there exists a viable case and controversy directly affecting the rights of the parties and, therefore, this appeal is not moot (see Matter of Hearst Corp. v Clyne, 50 NY2d 707, 717 [1980]; Matter of Manning v Glens Falls Natl. Bank & Trust Co., 265 AD2d 743, 744 [1999]).

Footnote 3: Although use of this type of "trigger trust" as a Medicaid planning device is now illegal pursuant 42 USC § 1396p (c), (d) and (e) and EPTL 7-3.1 (c), this legislation does not apply retroactively to invalidate the subject trust (see Bourgeois v Stadtler, 256 AD2d 1095, 1096 [1998], lv denied 93 NY2d 805 [1999]).

Footnote 4: Respondent conceded that he has not monitored the trust's financial performance, nor reviewed monthly statements with regard thereto, nor was he aware of what assets comprised the trust. He also acknowledged that did not ever reconcile the checkbook associated therewith.