Matter of Epstein (2022 NY Slip Op 00658)





Matter of Epstein


2022 NY Slip Op 00658


Decided on February 2, 2022


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 2, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
REINALDO E. RIVERA
LINDA CHRISTOPHER
LARA J. GENOVESI, JJ.


2018-12997 
2018-12999

[*1]In the Matter of Sal Epstein, etc., deceased. Elena Eckhouse, appellant; Anita Taormina, et al., respondents. (File No. 1881/08)


Novick & Associates, P.C. (Albert V. Messina, Jr., Donald Novick, and Haley Weinblatt & Calcagni, LLP, Islandia, NY [Richard A. Weinblatt], of counsel), for appellant.
Joseph J. Sciacca (Mauro Lilling Naparty LLP, Woodbury, NY [Seth M. Weinberg] of counsel), for respondents.



DECISION & ORDER
In two probate proceedings in which Elena Eckhouse petitioned, inter alia, to revoke the letters testamentary and letters of trusteeship, respectively, issued to Anita Taormina, Elena Eckhouse appeals from (1) a decree of the Surrogate's Court, Suffolk County (Stephen L. Braslow, S.), dated August 20, 2018, and (2) a decree of the same court, also dated August 20, 2018. The first decree, insofar as appealed from, after a nonjury trial, denied that branch of Elena Eckhouse's petition which was to revoke the letters testamentary issued to Anita Taormina. The second decree, insofar as appealed from, after the nonjury trial, denied those branches of Elena Eckhouse's petition which were to revoke the letters of trusteeship issued to Anita Taormina and for an award of attorneys' fees and costs.
ORDERED that the first decree is reversed insofar as appealed from, on the law, and that branch of the petition of Elena Eckhouse which was to revoke the letters testamentary issued to Anita Taormina is granted; and it is further,
ORDERED that the second decree is modified, on the law, by deleting the provision thereof denying that branch of the petition of Elena Eckhouse which was to revoke the letters of trusteeship issued to Anita Taormina, and substituting therefor a provision granting that branch of the petition; as so modified, the second decree is affirmed insofar as appealed from; and it is further,
ORDERED that one bill of costs is awarded to the appellant payable by the respondents personally.
The decedent died on August 17, 2008, survived by two daughters, Anita Taormina and Elena Eckhouse, and three grandchildren. Pursuant to the decedent's will, the Surrogate's Court appointed Taormina and Eckhouse as co-executors of his will.
The decedent's will devised a sum equal to his generation skipping transfer tax exemption (hereinafter GST exemption) to his grandchildren, in equal shares, to be held in trust for [*2]each of them with the principal to be distributed in thirds as each attained the ages of 25, 30, and 35 (hereinafter the GST trusts). The parties agree that, at the time of the decedent's death, his remaining GST exemption was $1,991,350. The will appointed Taormina and Eckhouse as co-trustees of the GST trusts. The decedent bequeathed the remainder of his estate to Taormina and Eckhouse in equal shares.
Among the decedent's assets at the time of his death were a 37.87895% share in ME & A Realty Co., LLC (hereinafter ME & A), and a 35.35% share in MM & I Realty Co., LLC (hereinafter MM & I) (hereinafter together the LLCs). In 2009, the estate distributed a 10% interest in the LLCs to both Taormina and Eckhouse. In the same year, the estate deposited $150,000 into each of the GST trusts in partial satisfaction of the decedent's bequests to the grandchildren.
Thereafter, disagreements arose regarding the distribution of the decedent's assets, particularly with respect to the funding of the GST trusts. On July 31, 2011, Taormina and Eckhouse entered into an agreement (hereinafter the July 2011 agreement) to distribute to the estate's beneficiaries the estate's assets, including the remaining 17.87895% of ME & A, the remaining 15.35% of MM & I, and $680,000 in cash, by giving 2% of each of the LLCs to each grandchild and dividing the remaining interests between Taormina and Eckhouse. Each of the beneficiaries of the estate signed the July 2011 agreement before a notary and each of the grandchildren, together with Taormina and Eckhouse in their role as co-trustees, thereafter executed a release relating to the distribution of shares of the LLCs (hereinafter the LLC releases).
In November 2012, ME & A sold its primary asset, a parcel of real property, for $46.5 million. In December 2012, Eckhouse, through counsel, instructed the managing member of the LLCs to allocate and disburse the estate's shares in the LLCs pursuant to the terms of the July 2011 agreement. The LLCs recorded the beneficiaries' interests in their books and disbursed profits and sale proceeds as instructed. Taormina objected to disbursement of the assets of the LLCs assets pursuant to the July 2011 agreement.
Meanwhile, disputes arose regarding filing and payment of the estate's taxes. Eckhouse eventually sought, and received, court assistance in compelling Taormina to permit the payment of taxes.
Additional disputes arose as a result of Taormina's claim that appreciation in the value of the assets of the LLCs resulted in the amounts transferred to the GST trusts exceeding the decedent's bequests, her refusal to distribute funds to the grandchildren from their GST trusts, and her refusal to create additional GST trust accounts so that the sum deposited in each could remain within the $250,000 insurance limit of the Federal Deposit Insurance Corporation (hereinafter FDIC). In 2016, the latter issue was resolved via a stipulation to split the trust fund assets into separate accounts, each of which would hold assets under the FDIC limit. The youngest grandchild eventually petitioned for certain distributions from his GST trust, which the Surrogate's Court granted, and, on appeal, this Court affirmed (see Matter of Epstein, 155 AD3d 729).
Eckhouse petitioned, inter alia, to revoke the letters testamentary issued to Taormina. She separately petitioned, among other things, to revoke the letters of trusteeship issued to Taormina and for an award of attorneys' fees and costs. Taormina petitioned to remove Eckhouse as both executor and trustee and to compel the grandchildren to return to the estate amounts which represented the alleged overfunding of the respective GST trusts and overpayments of cash distributions. After a lengthy nonjury trial, in two decrees, both dated August 20, 2018, the Surrogate's Court denied Eckhouse's petitions and Taormina's petition. Eckhouse appeals.
"A testator or testatrix has the right to determine who is most suitable among those legally qualified to settle his or her affairs, and that selection is not to be lightly discarded" (Matter of Venezia, 25 AD3d 717, 718; see Matter of Berlin, 135 AD3d 746, 750). Indeed, the removal of a fiduciary pursuant to SCPA 711 and 719 is equivalent to a judicial nullification of the testator's choice and may only be decreed when the grounds set forth in the relevant statutes have been clearly established (see Matter of Duke, 87 NY2d 465, 473; Matter of Steward, 193 AD3d 940, 942; Matter [*3]of Kaufman, 137 AD3d 1034, 1035). Accordingly, while courts have the power to remove a fiduciary, that power is exercised "sparingly" and only where the record demonstrates a danger to the estate or trust if removal is denied (Matter of Petrocelli, 307 AD2d 358, 359; see Matter of James H. Supplemental Needs Trusts, 172 AD3d 1570, 1572-1573; Matter of Joan Moran Trust, 166 AD3d 1176, 1179). However, notwithstanding the deference due a testator's choice of fiduciary, evidence of conflict and animosity between fiduciaries which impedes the orderly administration of the estate or trust is a valid ground upon which to remove a fiduciary (see Matter of Steward, 193 AD3d at 943; Matter of Kaufman, 137 AD3d at 1035; Matter of Berlin, 135 AD3d at 750; Matter of Venezia, 71 AD3d 905, 906).
Here, during the administration of this estate, Eckhouse and her representatives repeatedly presented to Taormina prepared estate tax returns and checks for her countersignature which she refused to sign despite having been warned, including by the Internal Revenue Service (hereinafter IRS) itself, of the risk that penalties and interest would be imposed. Taormina claimed that the alleged overfunding of the GST trusts precluded the filing of accurate estate taxes and that the estate owed more taxes than calculated by Eckhouse's representatives. As a result of Taormina's delay, penalties and interest were imposed by the IRS. Taormina also threatened to sue the estate's bank for honoring checks for tax payments issued by Eckhouse, prompting the bank to freeze the estate's accounts so that Eckhouse was forced to seek a court order directing the bank to release funds to the taxing authorities.
Irrespective of the merits of Taormina's claim that the GST trusts were overfunded (see Matter of Epstein, ___ AD3d ____ [Appellate Division Docket No. 2018-12998; decided herewith]), her refusal to cooperate in the filing of the estate's tax returns and the payment of taxes due was plainly contrary to the estate's best interest and endangered its assets. Similarly, even if Taormina had been correct that additional taxes were due, she has proffered no justification for her refusal to make (in her view) a partial payment.
As the Surrogate aptly remarked, Taormina and Eckhouse have "steadfastly refused to put aside their differences and work toward the orderly administration of this estate" and neither has indicated any willingness to move from her "entrenched position[ ]." This hostility has significantly delayed the administration of this estate, which has now been pending for approximately 13 years, and led to three appeals to this Court (including these appeals), and the record suggests that even this Court's intervention will not lead to a rapprochement between Taormina and Eckhouse (see Matter of Steward, 193 AD3d at 942-943; Matter of Berlin, 135 AD3d at 750; Matter of Duell, 258 AD2d 382, 382-383). Given Taormina's obstinate refusal to cooperate in filing and paying the estate's taxes, even at the cost of paying penalties and interest, we exercise our power, in reviewing a determination after a nonjury trial, and direct the removal of Taormina as an executor of the estate (see Matter of Heino, 186 AD3d 1216, 1218; cf. Matter of Petrocelli, 307 AD2d at 359).
"[A]n individual seeking removal [of a trustee] bears the burden of demonstrating that the trustee has violated or threatens to violate his or her trust or is otherwise unsuitable to execute the trust" (Matter of Giles, 74 AD3d 1499, 1503; see SCPA 711, 719[10]; Matter of Joan Moran Trust, 166 AD3d at 1179). "'A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior'" (Matter of Galasso, 19 NY3d 688, 694, quoting Meinhard v Salmon, 249 NY 458, 464; see Mercury Bay Boating Club v San Diego Yacht Club, 76 NY2d 256, 270). Such honor is characterized by "complete unselfishness and inflexible loyalty to the interests of the beneficiaries of the trust" (Matter of People, 303 NY 423, 430; see Restatement [Third] of Trusts § 78[1]).
Beginning in 2013, the youngest grandchild, joined by his sibling and Eckhouse, began to demand the distribution of funds from his GST trust and that the funds held in trust for him be divided into separate accounts so that each account could be kept under the insurance limit offered by the FDIC. Taormina refused either to distribute funds or divide them into insurable tranches until all three grandchildren returned the alleged overfunding to the estate. At trial, Taormina admitted that her refusal was intended to force the grandchildren to accede to her demands. Taormina [*4]eventually cooperated in dividing the funds only in response to court intervention.
Here, the record clearly demonstrates that, in contrast with the high duty of loyalty owed by a fiduciary, Taormina placed her own interest in a greater share of the estate above her fiduciary duty to act in the best interests of the GST trusts and their beneficiaries. Even accepting Taormina's rather strained protestations that her only goal was to "fund these trusts properly and pay the proper taxes" in accordance with the decedent's will, as a fiduciary, she was required to pursue those goals in a manner consistent with the protection of the beneficiaries' interests. This included, inter alia, protecting the trusts' assets by distributing funds into accounts such that each held less than the FDIC insurance maximum (see generally SCPA 1708[2][a]; Matter of Mede, 177 Misc 2d 974, 981 [Sur Ct, Kings County]; Restatement [Third] of Trusts §§ 90, Comment e; 93). Likewise, Taormina's claim that the trusts allegedly were overfunded did not excuse her refusal to disburse at least the amounts she acknowledged were bequeathed to the grandchildren.
As a general matter, "mere friction" between a trustee and a beneficiary is not sufficient ground for removal of a trustee, but, where that friction interferes with the proper administration of the trust, removal may be warranted (Matter of Edwards, 274 App Div 244, 247; see Matter of James H. Supplemental Needs Trust, 172 AD3d at 1573; Matter of Duell, 258 AD2d at 382-383; Restatement [Third] of Trusts § 37, Comment e[1], Illustration 7). In evaluating a trustee's conduct, "the relevant inquiry is whether the trustee has negatively impacted the trust or failed to serve the purpose of the trust" (Matter of James H. Supplemental Needs Trust, 172 AD3d at 1573; see Matter of Duell, 258 AD2d at 383; Matter of Edwards, 274 App Div at 248; Restatement [Third] of Trusts § 37, Comments d, e[1], Illustration 7). Here, the antagonism between Taormina and the youngest grandchild is manifest, and his complaints demonstrate that her conduct likewise endangered the other grandchildren's assets and deprived them of the disbursements to which they were entitled. Moreover, the record indicates that, by the time of this decision, all three grandchildren will have reached age 35 such that all three are now entitled to disbursement of both interest and all accumulated earnings, so Taormina's refusal to disburse the funds has also thwarted the decedent's purpose in creating the trusts. Under these circumstances, the Surrogate's Court improvidently exercised its discretion in denying that branch of Eckhouse's petition which was to remove Taormina as trustee of the GST trusts.
However, the Surrogate's Court providently exercised its discretion in denying that branch of Eckhouse's petition which was for an award of attorneys' fees, as Taormina's position was not frivolous within the meaning of 22 NYCRR 130-1.1(c)(1), (2) (cf. Matter of JPMorgan Chase Bank, N.A., 188 AD3d 1211, 1213; Gottlieb v Colonel, 180 AD3d 877, 881).
BRATHWAITE NELSON, J.P., RIVERA, CHRISTOPHER and GENOVESI, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court